ESTATE OF JOHN JOSEPH GARVAN, THE FIRST NATIONAL BANK OF BOSTON, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44746.   Promulgated February 25, 1932.

*George H. B. Green, Jr., Esq.,* for the petitioner.
*R. F. Staubley, Esq.,* for the respondent.

OPINION.

GOODRICH: This proceeding is for the redetermination of a deficiency in estate tax of $9,661.04. Petitioner also challenges the validity of the original assessment of estate tax in the amount of $71,914.58, which it has heretofore paid under protest.

The following stipulation was filed:

(1) It is hereby stipulated by and between the parties in the above-entitled action that the following facts are admitted and need not be proved.

(2) The petitioner is the First National Bank of Boston as Administrator of the Estate of Sir John Joseph Garvan. The legal residence of the decedent, Sir John Joseph Garvan, at the time of his death and at the time he made the transfers set forth in paragraph 4 infra was Sydney, New South Wales, Australia. The decedent at the time of his death and at the time he made these transfers was not engaged in any business in the United States. His death occurred on July 18, 1927, and on May 24, 1928, the First National Bank of Boston, a corporation duly organized under the laws of the United States and having a usual place of business in Boston, Massachusetts, was appointed administrator of said Estate with the will annexed by the Probate Court of Suffolk County, Massachusetts.

(3) The gross estate of the decedent within the United States if as a matter of law said property may be included in determining gross estate situated within the United States (not including certain property which he transferred prior to his death, a list of which is set forth in Schedule B infra, and the value of which the Commissioner of Internal Revenue included in the gross estate of the decedent within the United States) consisted of the following securities at the values shown in the last column.

SCHEDULE A

| Item | | | | Fair Market Value at Date of Death |
|---|---|---|---|---|
| 1. | 2,300 shs. | Swift International | | $51,750.00 |
| 2. | 4,102 " | Swift & Company | | 480,959.50 |
| 3. | 798 " | Libby, McNeil & Libby | | 6,783.00 |
| 4. | 933 " | National Leather Co | | 2,915.63 |
| 5. | $57,000—Dominion of Canada 5s 1952 | | | 59,850.00 |
| | Interest on above | | | 609.58 |
| 6. | $38,000—Dominion of Canada 5½s 1934 | | | 39,282.50 |
| | Interest on above | | | 447.03 |
| 7. | $50,000—Province of Ontario 6s 1943 | | | 55,625.00 |
| | Interest on above | | | 1,025.00 |
| 8. | $33,000—Province of Ontario 5s 1948 | | | 33,825.00 |
| | Interest on above | | | 426.25 |
| | Total | | | 733,498.49 |

At the time of the decedent's death the securities set out in said Schedule A were held by the said bank; they were not at that time and never had been hypothecated or pledged as security for any debt or obligation nor were they employed in whole or in part in any business carried on in the United States; they were held by said bank solely for the purpose of collection of the income therefrom for the account of the decedent.

(4) On or about October 26, 1926, the decedent transferred by gift outright to his brothers and sisters four identical lots of personal property, the value of all of which the Commissioner of Internal Revenue included in the gross estate of the decedent within the United States under the provisions of the Revenue Act of 1926 for purposes of the Federal Estate Tax. The detailed items contained in each of the four lots are as follows:

SCHEDULE B.

| Item | Fair Market Value at Date of Death |
|---|---|
| 1. 970 shs. Swift & Company | $113,732.50 |
| 2. 600 " Swift International | 13,500.00 |
| 3. 190 " Libby, McNeil & Libby | 1,615.00 |
| 4. 230 " National Leather Co | 718.75 |
| 5. $15,000—Dominion of Canada 5s 1952 | 15,750.00 |
| Interest on above | 160.42 |
| 6. $2,500—Dominion of Canada 5½s 1934 | 2,584.38 |
| Interest on above | 29.41 |
| 7. $12,000—Province of Ontario 6s 1943 | 13,350.00 |
| Interest on above | 244.00 |
| 8. $8,000—Province of Ontario 5s 1948 | 8,200.00 |
| Interest on above | 102.22 |
| Total | $169,986.68 |

At the time of said transfer on or about October 26, 1926, the securities set out in Schedule B were held by said bank; from the time of said transfer to the date of death of the decedent they were held by the National City Bank of New York; they were not at any time either before or after said transfer hypothecated or pledged as security for any debt or obligation nor were they employed in whole or in part in any business carried on in the United States; they were held by said banks solely for the purpose of collection of the income therefrom for the account of the decedent prior to said transfer and thereafter for the account of the transferees.

(5) The Commissioner of Internal Revenue has determined the value of the gross estate within the United States to be $1,413,445.21, the details being as follows:

| | |
|---|---|
| 4 times $169,986.68 (total of Schedule B) equals | $679,946.72 |
| Total of Schedule A above | 733,498.49 |
| Grand total | $1,413,445.21 |

(6) These four transfers were gifts and were made without an adequate and full consideration in money or money's worth. The petitioner does not admit that these transfers were made in contemplation of death.

(7) All of the bonds included in Schedule A supra were physically present in the United States at the time of the decedent's death. All of the bonds included in Schedule B supra were physically present in the United States at the time the transfers were made. All the certificates of the shares of stock in Schedule A were physically present in the United States at the time of the decedent's death. All the certificates of the shares of stock included in Schedule B were physically present in the United States at the time the transfers were made.

(8) Compania Swift Internacional (Swift International) is a corporation organized under the laws of the Argentine Republic.

(9) There was no property of the decedent in the United States at the time of his death, other than as listed in Schedules A and B herein.

(10) None of the bonds included in Schedule A or in Schedule B was secured by any interest in real estate situate within the United States.

(11) The value of the decedent's gross estate situated outside of the United States was $765,314.49. The amount of the gross deductions from the decedent's estate (Item 4, Schedule M, Federal Estate Tax Return) was $29,999.53.

(12) Either party may introduce further evidence on any of the matters in issue in this case which is not inconsistent with the facts herein stipulated.

Later an additional stipulation was filed presenting a table of the mortality statistics contained in the 29th annual report of the Bureau of the Census, the relevancy and materiality of which is denied by respondent, and showing that a tax of $71,914.58 disclosed by petitioner's estate-tax return filed on May 17, 1928, was paid under protest on the same date.

It is further agreed upon the record that Swift International owned no property within the United States; that Swift & Company, Libby, McNeil & Libby, and National Leather Company are domestic corporations; and that Dominion of Canada bonds and bonds of the Province of Ontario are bonds of a foreign government, not secured by property within the United States.

Petitioner's allegations of error amount to a contention that, because decedent was a nonresident alien, his estate can not be subjected to an estate tax by the United States. Specifically, it alleges that respondent erred in including in the estate for purposes of taxation:

(1) shares of stock of a foreign corporation, and bonds of foreign governments;

(2) shares of stocks of domestic corporations;

(3) property transferred by decedent by gift, after the effective date of the Revenue Act of 1926 and within two years prior to his death.

Petitioner also alleges that respondent failed to allow as deductions in determining the net estate subject to tax, miscellaneous administration expenses. Such expenses should be allowed on the basis of gross deductions of $29,999.53 in determining the net estate subject to tax in accordance with the stipulation entered into between the petitioner and the respondent.

The provisions of the Revenue Act of 1926 pertinent to the issues here read in part as follows:

SEC. 301. (a) * * * a tax * * * is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this Act, whether a resident or nonresident of the United States.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

*       *       *       *       *       *       *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

*       *       *       *       *       *       *

SEC. 303. (d) For the purposes of this title, stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States, and any property of which the decedent has made a transfer, by trust or otherwise, within the meaning of subdivision (c) or (d) of section 302, shall be deemed to be situated in the United States, if so situated either at the time of the transfer, or at the time of the decedent's death.

We have previously held that bonds of a foreign government and shares of stock of a foreign corporation owned by the estate of a nonresident decedent, the paper evidences of which were held in this country for certain restricted purposes, as in the case now at bar, may not be included in determining the value of decedent's estate situated in the United States. *Ernest Brooks et al.*, 22 B. T. A. 71. That case arose under the Revenue Act of 1924, the pertinent provisions of which are not materially different from those of the 1926 Act above quoted. Following that decision, we reverse respondent's action in including in decedent's estate the bonds of foreign governments and the shares of stock of a foreign corporation. See also *Shenton* v. *United States*, 53 Fed. (2d) 249.

But, as pointed out in the *Brooks* case, in determining the net estate of a nonresident decedent, section 303 (d) provides that stock of a domestic corporation shall be deemed property within the United States. There is no ambiguity in this statutory provision and it is conceded that the taxability of the shares of stocks of domestic corporations here involved depends squarely upon it.

Petitioner. urges that such stock was situated outside the United States and, under the rule *mobilia sequuntur personam,* had a situs at the domicile of the owner and contends that so much of section 303 (d) of the Revenue Act of 1926 as operates to tax stock in domestic corporations owned by a nonresident decedent is in conflict with the due process clause of the Fifth Amendment and unconstitutional.

In support of this contention our attention is called to certain recent cases in which the Supreme Court has applied the rule *mobilia sequuntur personam* in fixing the situs of intangible property at the domicile of the owner for the purpose of taxation. *Farmers' Loan & Trust Co.* v. *Minnesota,* 280 U. S., 204; *Baldwin* v. *Missouri,* 281 U. S. 586; *Beidler* v. *South Carolina,* 282 U. S. 1; *Rhode Island Hospital Trust Co.* v. *Doughton,* 270 U. S. 69; *First National Bank of Boston* v. *State of Maine,* 284 U. S. 312. All of these cases arose under the Fourteenth Amendment and, we believe, are not controlling where the power of Congress to tax is considered. These decisions indicate that the underlying reason for the application of the rule to intangibles, as between the States, is to prevent the injustice of double taxation, but this does not apply necessarily, nor has it been held to apply, where the Federal Government imposes a tax. Generally, both the Federal and State Government may tax the same object or the same transfer at the same time, and the taxation by the one is not a limitation upon the taxation by the other. See *Frick* v. *Pennsylvania,* 268 U. S. 473.

The Fourteenth Amendment is a limitation on the power of the States to tax, but the Fifth Amendment under which the issue here arises is not a limitation upon the taxing power of the Federal Government: *McCray* v. *United States,* 195 U. S. 27; *Billings* v. *United States,* 232 U. S. 261; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Brushaber* v. *Union Pacific Railroad Co.,* 240 U. S. 1, *unless* the exercise of the taxing power is so unreasonable and arbitrary as to amount to a confiscation rather than a tax. *Brushaber* v. *Union Pacific Railroad Co., supra; Nichols* v. *Coolidge,* 274 U. S. 531; *Blodgett* v. *Holden,* 275 U. S. 142; 276 U. S. 594; *Untermyer* v. *Anderson,* 276 U. S. 440. For this Board, the clear and definite statutory instruction is stronger authority than the urged analogy and possible application to this case, arising under the Fifth Amendment, of the recent decisions of the Supreme Court invoking and applying the *mobilia* doctrine to cases arising under the Fourteenth Amendment. Here, Congress has expressed a clear intention to tax and if that intention is not consistent with the rule *mobilia sequuntur personam,* we must assume that Congress intended to repeal the rule in so far as it is in conflict. Cf. *In re Whiting's Estate,* 44 N. E. 715.

Petitioner has failed to indubitably demonstrate to us that this statute infringes the constitutional guarantees which he invokes;

that the tax here imposed is so arbitrary or unreasonable as to cause us to disregard or reject the explicit provision of the statute under which it is laid. As said by Judge L. Hand in *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, at page 545:

\* \* \* limitations like the Fifth Amendment are not like sailing rules or traffic ordinances; they do not circumscribe the actions of Congress by metes and bounds. \* \* \* So it does not seem to us that the situation here calls for so heroic a remedy as to declare the statute unconstitutional, nor indeed, for the lesser one of wringing the words out of their natural meaning. \* \* \* while colloquial language is a fumbling means of expression, there are limits to its elasticity; to deny the application of these words to the case at bar seems to us to pass the point of rupture.

Respondent is sustained in including in decedent's estate, for purposes of taxation, the shares of stock in domestic corporations.

We come now to consider petitioner's third issue, in support of which it is urged that section 302 (c) is unconstitutional in so far as it raises a conclusive presumption that gifts made within two years prior to decedent's death were made in contemplation of death. We have so held in *American Security & Trust Co. et al.*, 24 B. T. A. 334. But, as pointed out in that case, section 302 (c) contains two provisions, the first being set out in the first sentence of that section and demanding proof to overcome the presumption of its applicability in any case wherein the Commissioner has made a determination thereunder. It requires that the value of decedent's interest in property which he has *at any time* transferred, except by a bona fide sale, in contemplation of death, or intended to take effect in possession or enjoyment at or after his death, shall be included in the estate for purposes of taxation. Where, acting under authority of that provision, the Commissioner determines that decedent has made such a transfer of an interest in property and includes the value of such interest in decedent's estate, that determination is prima facie correct and the burden of proving it incorrect rests upon the challenger. *Wickwire* v. *Reinecke*, 275 U. S. 101.

In this case respondent has included in decedent's estate the total value of the properties, consisting of shares of stock of domestic and foreign corporations and bonds of foreign governments, which were included in the four transfers made by decedent in October, 1926. Petitioner " does not admit that the transfers were made in contemplation of death." Such a denial, if it be a denial, is not the proof required to rebut respondent's determination, which we must take to be prima facie correct, nor does it serve to shift from petitioner to respondent the burden of proof of the facts relative to the transfers. Nowhere in this record is it indicated that respondent, in so including the property transferred, is relying solely upon the conclusive presumption raised by section 302 (c). On the con-

trary, the fact that respondent has included in this estate the total value of the properties transferred without deducting therefrom the exemption of $5,000 on each transfer allowed by the second provision of this section, indicates that he has determined as a fact that these transfers were made in contemplation of death.

Nor does it appear upon this record that petitioner was in possession of evidence proving that the transfers in fact were not made in contemplation of death. Petitioner having failed in the proof of facts essential to his contention, we sustain respondent's action in including in decedent's estate the shares of stocks of the domestic corporations embraced by the four transfers. We except, however, the transferred shares of stocks of foreign corporations and the bonds of foreign governments for the reason that, under our decision in the *Brooks* case, *supra*, such stocks and bonds were not situated in the United States, either at the time of the transfer or at the time of decedent's death, as provided in section 303 (d). Consequently, they should not be included in decedent's estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

LANSDON did not participate in the consideration of or decision in this report.

MARQUETTE concurs in the result.

---

TRAMMELL, dissenting: In so far as the prevailing opinion holds that stocks in domestic corporations, both those held by the decedent at the time of his death and those transferred by him, are subject to the estate tax, I am unable to agree.

In so far as stocks in domestic corporations are concerned, the real controversy is over the effect of section 303 (d), which is set out in the prevailing opinion.

Clearly, if the statute had not provided that stock of a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States, such stock would be governed by the rule that *mobilia sequuntur personam*, unless it had become a part of or used in a localized business. See *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69; *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204; *Baldwin* v. *Missouri*, 281 U. S. 586; *First National Bank of Boston* v. *Maine*, 284 U. S. 312. It seems clear from the above opinions that the place where the paper evidences of the securities and stocks were located is unimportant and does not indicate where the stocks and securities are situated, unless they are used in a local business, or unless they are placed beyond the control

of the beneficial owner and beyond his power of removal. See *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83.

Section 303 (d) of the statute, quoted in the majority opinion, does not undertake to change the general rule applicable to intangibles, including stock in domestic corporations, unless the stock is *held by the decedent at the time of his death*. In so far as any transferred property is concerned, it is deemed to be situated in the United States if so situated at the time of decedent's death or at the time of transfer. There is every indication that the situs of transferred stock is intended by the statute to be governed by the general rule. No distinction between domestic stock and any other kind of stock or any other property is drawn. If it is not to be governed by the *mobilia* rule or the business situs rule, how can stock in a domestic corporation be situated at one place at the time of death and at another place at the time of transfer? So long as a corporation remains a domestic corporation, if the situs of its stock is changed its situs must depend upon something else than the fact that it is stock in a domestic corporation. Domicile of the owner may change or it may be placed or used in a localized business. Clearly, then, the statute contemplated that its situs was governed by the general rule. There is then no statutory provision to be considered which undertakes to change the situs of transferred stocks. Since, in so far as the transferred stocks in domestic corporations are concerned, the statute does not undertake to change the recognized rule as to where they were situated and it being shown that they were not a part of a localized business in the United States, I think that they were situated at the domicile of the owner and not in the United States, and have no taxable situs here. In so far as these stocks are concerned no question of constitutionality is involved. The statute specifically provides that certain stocks in domestic corporations shall be deemed to be situated in the United States. As to all *transferred* property, including stocks, the statute is silent as to any situs by virtue of its being in domestic corporations. The specific provision as to stocks *held* might be interpreted as an intention that other stocks in such corporations should not be so treated, or deemed, and in the absence of legislation on the subject, it seems that the general rule prescribed by the Supreme Court as to the situs of stock should govern such stock as was transferred.

In so far as the prevailing opinion treats transferred stock in domestic corporations in the same manner as stocks held, I think the opinion is clearly wrong.

The important question presented is whether Congress may by legislative fiat constitute stock in domestic corporations owned and held by a decedent at the time of his death to be situated within the

United States, if otherwise it is not so situated. Conceding that Congress has unlimited and unrestricted power of taxation with regard to persons, property, business or transactions within its jurisdiction, it clearly has no power to levy a tax unless either the person, the property, business or transaction with respect to which the tax is levied is or occurs within or is subject to the jurisdiction of the United States, and if property or the transfer thereof is not within the jurisdiction of the United States, clearly Congress could not make it so by legislative declaration.

With respect to limitation on power to tax, the Supreme Court, in the case of *State Tax on Foreign Held Bonds*, 15 Wall. 300, said:

The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property and business. Whatever form taxation may assume, whether as duties, imposts, excises or licenses, it must relate to one of these subjects.

While the above decision related to the power of a State to tax, the rule applies with equal force to the Federal Government. It seems to be fundamental that one government can not tax the citizens of another government residing abroad except with respect to business transacted or income derived, property situated or a transaction which occurs within its own jurisdiction. In our system of dual government, when the power to tax within a sphere is given to the Federal Government or reserved to the States, the States are no more limited in their sphere than the Federal Government in its sphere. The Federal Government has no more power to tax objects or subjects or the transfer thereof outside of its jurisdiction than the States. See *Michigan Central Ry. Co.* v. *Slack*, 17 Fed. Cases 263; *Rose* v. *Himely*, 4 Cranch. 240; *The Appollon*, 9 Wheat. 362; *Hilton* v. *Guyot*, 159 U. S. 113; *United States* v. *Erie R. R.*, 25 Fed. Cases 1019. In the latter case, decided by the Circuit Court, Chief Justice Waite said:

The Congress of the United States can have no greater power to tax persons or property not within the jurisdiction of the United States than a state has to tax persons and property not within its jurisdiction * * *. The power of the United States is limited to persons, property and business within the jurisdiction as much as that of a state is limited to the same subjects within its jurisdiction. *State Tax on Foreign-Held Bonds*, 82 U. S. 300.

The courts have never rejected this principle.

The Supreme Court having laid down the rule that intangible property such as stocks of domestic corporations is situated at the domicile of the owner, or may have a taxable situs at the place where it is engaged or used in business, is it situated at some other place because of a legislative enactment? I do not think so. The statute involved here did not undertake to measure the tax by the value of

property in the gross estate of a nonresident decedent unless that property was situated in the United States, but added the provision that stock in domestic corporations owned and held by a decedent would be deemed to be situated in the United States. Thus the only taxable situs imposed by the statute is upon property situated in the United States in so far as nonresidents are concerned.

Clearly the decedent was not doing business in the United States and the property involved could in no sense be said to be a part of a localized business in this country. If the rule laid down by the Supreme Court is to be accepted that intangibles follow the domicile of the owner, this property was situated in Australia and not in the United States, and the United States would have no power to subject intangible property situated in Australia to Federal estate tax than it would to tax real property situated in Australia or the transfer thereof, unless in any event this Government had jurisdiction of the person of the owner or the transfer by death occurred in the United States under its own laws or jurisdiction. Of course if the decedent had been a citizen of the United States, the power of the Federal Government over a citizen with respect to taxation would involve a different principle. As the Supreme Court said in the case of *United States* v. *Bennett*, 232 U. S. 299, Congress had the constitutional right to tax its citizens on account of the use of foreign-built yachts even if the property during the taxable period had its situs beyond the territorial limits of the United States. But that case, as we said in the case of *Ernest Brooks et al.*, 22 B. T. A. 71, was based upon the relationship of the United States to its citizens and their relations to it and did not involve citizens and residents of foreign countries. If a person is a resident of this country, regardless of his citizenship, a different principle would be involved. This country might then be said to have jurisdiction of the person. Clearly it could not be said, however, that Congress has the power to tax a citizen of a foreign country residing in such country in connection with the use of property situated in a foreign country. Nor do I think that Congress has the power to say that property situated in a foreign country is situated in this country. This principle need not rest upon the constitutional power of Congress alone, but involves also a broader principle of sovereign power in its relation to international law. The powers of one sovereign do not extend beyond the limits of its jurisdiction.

The principle involved here is somewhat related to that involved in the case of *First National Bank of Boston, Executor, supra,* where the court held that Maine could not tax a transfer by death of stock in a Maine corporation; that the property was not situated in that State, nor did the transfer by death occur there. The court said

that the stock had a situs at the domicile of the owner and not in the State where the corporation was organized and that the transfer occurred in the State of domicile of the owner. In my opinion the situation would have been the same even if the Maine statute had provided that stock under the above circumstances would be *deemed* to be situated in that State. The Supreme Court laid down the rule that intangibles, including stocks in corporation, are situated at the domicile of the owner, and that the fact that the corporation was organized in Maine gave the stock no situs there. The same rule was definitely applied to corporate stock as had been applied to other intangibles. In my opinion, the State of Maine could not have drawn to itself the power to tax the transfer by death of the stock there involved by declaring in the statute that the stock of corporations organized therein should be deemed to be situated in that State.

The courts have interpreted the word " deemed " to mean " regarded " " considered " or " adjudged." See *Leonard* v. *Grant*, 5 Fed. 11; *United States* v. *Doherty*, 27 Fed. 730; *Michel* v. *Nunn*, 101 U. S. 423; *Douglas* v. *Edwards*, 298 Fed. 229. With this meaning the statutory provision under consideration might be read that stocks in domestic corporations should be regarded, considered or adjudged to be situated in the United States. In the case of *Schlesinger* v. *Wisconsin*, 270 U. S. 230, the Supreme Court held that a statute of Wisconsin which provided that gifts of a material part of the donor's estate within six years prior to the donor's death " shall be construed to have been made in contemplation of death " was unconstitutional, as being a violation of the Fourteenth Amendment, and that the classification for taxation must rest on some reasonable basis. Congress has made a classification between stock held and that transferred. The Fifth Amendment requires a reasonable classification. Can Congress under that amendment consider property situated in the United States if it is not, and subject a transfer thereof by death to tax when it was not transferred under its laws or the laws of any State or Territory subject to its jurisdiction, or can Congress say that a share of stock in a domestic corporation shall be deemed situated in the United States, dependent solely upon whether or not it was transferred by decedent or held by him at a certain time.

To say that stock in a domestic corporation held by the decedent shall be deemed to be property in the United States, but stock in the same corporation transferred before decedent's death to take effect at or after death or made in contemplation of death shall be governed by the law otherwise applicable seems to be unreasonable, arbitrary and capricious and thus contrary to the Fifth Amendment. It seems

arbitrary and capricious to say that a share of domestic stock owned by decedent shall be situated in the United States, due to the fact alone that it is stock in a domestic corporation, but another share of the corporation's stock may be situated at another place, depending solely on whether the owner had transferred it; that the fact that it is in a domestic corporation is not material if decedent had transferred it. If the fact that stock is in a domestic corporation determines its situs, the only question would be the power of Congress to so enact, but the situs of such stock does not rest on this basis. It must also be owned by the decedent at the particular time of death, to give it a situs here. It would seem that Congress would have no more power under the Fifth Amendment to provide that such stocks would be considered to be situated in the United States than a State under the Fourteenth Amendment to provide that transfers made within a certain period should be considered to have been made in contemplation of death, if contrary to the fact, or than a State would have to provide that money or securities in banks in that State should be deemed to be situated in that State. It would seem that Congress has no more power to change the situs of property than the States would have. But it would hardly be contended that a State by mere verbiage of the statute could subject property to tax when it is beyond its jurisdiction. If it be construed that Congress created a conclusive presumption as to the place where stocks in domestic corporations are situated then we must apply the principle of *Railroad Co.* v. *Turnipseed*, 219 U. S. 35; *Morley* v. *Georgia*, 279 U. S. 1; *Bailey* v. *Alabama*, 219 U. S. 219, in which the court held that a statute which creates a presumption that is arbitrary or that operates to deny fair opportunity to repel it violates the due process clause of the Fourteenth Amendment and under other decisions herein cited the same rule is applied to the Fifth Amendment. Where the statute provides that stocks in domestic corporations held by the decedent shall be deemed to be property in the United States it may fairly be interpreted as a presumption created by statute which is governed by the above principles.

If it be regarded entirely as a question of law as to where intangibles are situated, then the Supreme Court has settled the question that the property in this case is not situated in the United States, and our problem is, Can Congress " regard " the property or " consider " or " adjudge " it to be situated within the United States? This is entirely different from the question as to the power of Congress to create another taxable situs.

Congress has not undertaken to levy the tax except as to property situated in the United States.

On the other hand, if the place where property is situated be considered as a question of fact, can Congress by legislation change the fact? Can the place where property is situated be either created or changed by legislation? I think not. A legislative body can create the law, to which the facts are applicable, but it can not create or change facts. If neither the person or property is situated in nor its transfer occurs within the jurisdiction of the United States, it seems clear that Congress could not by legislation give itself jurisdiction thereof.

It may be contended that even if Congress did not have the power to prescribe conditions as to the organization of the corporations or to control or regulate the transfer of their shares by death, this being an estate tax, an excise imposed upon the transfer by death, it still had the power under the principle of *Knowlton* v. *Moore*, 178 U. S. 41, to impose the tax upon the transfer regardless of the fact that no rights or privileges with respect to the transfer were controlled or regulated by the Federal Government. That case, however, did not involve a tax upon the transfer by death in the case of a nonresident alien whose property was not situated in the United States and where the transfer took place and was regulated by the laws of a foreign country. In the *Knowlton* case, *supra*, the transfer by death occurred and was regulated in accordance with the laws of a State of the Union and the transfer occurred within the United States. But it does not follow that Congress can impose an excise on the transfer of property where that transfer occurs in a foreign country and was governed by laws of a foreign country and where the jurisdiction of the United States did not extend to any rights or privileges with respect to such transfer. The Supreme Court in the case of *Frick* v. *Pennsylvania, supra,* said:

It is a fundamental principle that real estate descends pursuant to the law of its situs without reference to the law of the owner's domicile and that personal property whether tangible or intangible and wheresoever situated descends pursuant to the law of the owner's domicile * * * *Where the situs of the property transferred is outside the taxing state and the decedent was a nonresident of the taxing state the transfer is not taxable.* * * * Where the property is intangible the transfer is taxable since the property passes according to the law of the domiciliary state. *Bullen* v. *Wisconsin,* 240 U. S. 625. [Italics ours.]

The case of *Eidman* v. *Martinez*, 184 U. S. 578, involved the Federal inheritance-tax law of 1898, which applied to property "passing by will or by intestate laws of any State or Territory." The decedent was domiciled in Spain. Some of his property consisted of intangibles such as stocks and bonds, in domestic corporations the

paper evidences of which were in New York. The court said: "As the property in this case did not pass under any law of any State or Territory of the United States or by the intestate laws of any such State or Territory," such property was not subject to the Federal inheritance tax, the court further saying, "the whole scheme of the Act evidently contemplates the application of the tax only to the property of a person domiciled in the United States or territory of the United States whose property is transmitted under our laws." The court reaffirmed the doctrine previously established that such intangible property as was there involved, in so far as its transfer by death was concerned, was governed by the law of the domicile of the owner and under the laws of that jurisdiction it passed. Could the property in that case have passed under our laws by Congress enacting a provision that it would be deemed to have done so or to the same effect by " deeming " the property to be situated here?

In connection with the Federal Estate Tax Act of 1916, which in so far as is material is no different from the act before us, the Attorney General of the United States rendered an opinion, 31 Ops. Atty. Gen. 287, in which he stated that real estate situated in a foreign country, although owned by a resident of the United States, was not subject to the provisions of that act. He expressed the opinion that Congress did not intend to tax real estate situated outside of the United States which passed by the testate or intestate laws of a foreign country; that the transfer of real estate, not only in form but in substance, that is, who shall take it, to what extent and under what conditions, is governed by the *lex rei sitae*. On the other hand, as to personal property, he stated that the rule was that *mobilia sequuntur personam*, which had the effect of drawing intangible personal property to the jurisdiction of the domicile. He used the following language:

> The plain sense of the matter is that real estate in a foreign country, unlike personal estate there, cannot be enjoyed as such in any true sense without the protection and supervision of the laws of the foreign country in which it is situated, while as to personal property the fact may very well, for obvious reasons, be different. Hence all governments agree to recognize the domicile of the decedent as the situs of the primary administration upon his personal estate while not recognizing his domicile as to his realty.

In the above situation, upon which the Attorney General rendered this opinion, the decedent was a resident of the United States domiciled here. The act of Congress involved was admittedly broad enough to include real estate situated in a foreign country when owned by a resident of the United States.

It seems clear that if the right to transmit intangibles by death or the ownership thereof is regulated and controlled by the law of

the domicile, see *First National Bank of Boston* v. *Maine, supra*, that right in this case is controlled, protected and enforced by the law of the foreign country. This country has no power or control over property situated in a foreign country or its transmission by death. In so far as domestic stocks are concerned, their ownership can be changed regardless of any transfer on the books of the corporation. It is generally accepted that it is not necessary that certificates of stock be actually issued to the owners thereof. In the case of *Pacific National Bank* v. *Eaton*, 141 U. S. 227, the court said: "Millions of dollars of capital stock are held without any certificate; or if certificates are made out, without their ever having been delivered. A certificate is authentic evidence of title to stock; but it is not the stock itself nor is it necessary to the existence of the stock. It certifies to a fact which exists independently of itself."

In so far as the right of the property in stock or the transfer of the ownership thereof is concerned, no law of the United States need be resorted to. The fact that it might be necessary to resort to the courts of this country to enforce the right of transfer on the books or to enforce the right to dividends, is not important. In the case of bonds or other debts, resort must be had to the laws and courts of the jurisdiction of the debtor, but the Supreme Court has completely settled the question, to the effect that, notwithstanding this fact, the bonds are situated at the domicile of the owner in the cases herein cited, and in the case of *First National Bank of Boston, supra*, this rule was specifically applied to stocks.

If the state of the debtor whose laws have to be resorted to for protection and collection of the debt does not have jurisdiction to tax the transfer of the debt belonging to a nonresident, and if a state in which a corporation is organized does not have the right to tax the transfer of the shares because they are not situated in that state, under the Fourteenth Amendment for lack of due process of law, it would seem that Congress would be similarly limited by the Fifth Amendment under the identical language. If a state has not jurisdiction it would seem that it could not give itself jurisdiction by declaring that debts owing in the state or stock of corporations organized therein would be deemed to be situated there. The rule that a state is limited to objects within the sphere of its jurisdiction or the limits of its sovereignty is also applicable to the Federal Government.

In this case the transfer of the stock of domestic corporations occurred outside of the jurisdiction of the United States. The transfer not being regulated or controlled or authorized by any right

granted by the United States, and the occurrence upon which the excise is levied not being within the United States, the principles of the *Knowlton* v. *Moore* case, *supra*, have no application. I do not think that Congress has the power to levy an excise upon the happening of an event in a foreign country regulated and controlled entirely by laws of the foreign country unless this Government has jurisdiction of the person of the owner of the property transferred or unless the property transferred was the part of a localized business in the United States. The language of the court in the *Baldwin* v. *Missouri* case, *supra*, is pertinent on this issue. The court said:

> We find nothing to exempt the efforts to tax the transfer of the deposits in Missouri banks from the principle applied in *Farmers' Loan & Trust Co.* v. *Minnesota*, *supra*. So far as disclosed by the record, the situs of the credit was in Illinois where the depositor had her domicile. There the property interest in the credit passed under her will; and there the transfer was actually taxed. This passing was properly taxable at that place, and not otherwhere.

> The bonds and notes, although physically within Missouri, under our former opinions were choses in action with situs at the domicile of the creditor. At that point they, too, passed from the dead to the living, and there this transfer was actually taxed. As they were not within Missouri for taxation purposes, the transfer was not subject to her power. *Rhode Island Trust Co.* v. *Doughton*, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374.

While it may readily be conceded that everything over which sovereign power extends is an object of taxation (see *Van Brocklin* v. *Anderson*, 117 U. S. 151; *McCulloch* v. *Maryland*, 4 Wheat. 316), our question here is, Does the sovereign power of one sovereign extend to property which is situated in another country and where the transfer thereof occurs in another country and the first country had nothing to do with any privilege or right in connection with the transfer?

It may be contended that a different rule should govern the Federal Government in its taxation of intangibles or the transfer thereof by death from that which is applicable to States. It is manifest that the States and the Federal Government have different powers and that the Federal Government of course is not limited by the Fourteenth Amendment as the States are. The Federal Government, however, is limited by the Fifth Amendment. The due process clause of that Amendment is a restriction on the Federal Government as the due process clause of the Fourteenth Amendment on the States. See *United States* v. *Armstrong*, 265 Fed. 683; *Davidson* v. *New Orleans*, 96 U. S. 97; *Bartlett Trust Co.* v. *Elliott*, 30 Fed. (2d) 700; *Hurtado* v. *California*, 110 U. S. 516; and extends to and includes aliens. *Russian Volunteer Fleet* v. *United States*, 282 U. S. 481.

By the due process clause of the Fourteenth Amendment, it was clearly not intended to impose on the states when exercising their

power of taxation any more rigid or strict curb than that imposed on the Federal Government by the Fifth Amendment. *French* v. *Barber*, 181 U. S. 324; *Tonawanda* v. *Lyon*, 181 U. S. 389; *Cass Farm Co.* v. *Detroit*, 181 U. S. 396.

The principle in *Saltonstall* v. *Saltonstall*, 276 U. S. 260, a case arising under State law where the Fourteenth Amendment was applicable, was applied in the case of *Chase National Bank* v. *United States*, 278 U. S. 327, a case arising under the Federal statute to which the Fifth Amendment was applicable. The same principle was held applicable to both the States and the Federal Government in the cases of *Nichols* v. *Coolidge*, 274 U. S. 531, and *Coolidge* v. *Long*, 282 U. S. 582.

In so far as the transferred domestic stock, as to which the statute does not by express provision " deem " to be situated in the United States, it seems plain that the rule applicable to States as to where it is *situated* is applicable to the Federal Government. Surely it would not be situated at one place for the States and at another place or its situs based on a different rule as to the Federal Government.

In the case of *DeGanay* v. *Lederer*, 250 U. S. 376, the Supreme Court applied to the Federal Government the same tests and the same rule which it applied in the Fourteenth Amendment cases as to States in so far as the determination of the situs of property and the sources of income therefrom were concerned for the purposes of Federal taxation. The court made no attempt to distinguish its decisions involving the power to tax such property. On the other hand, it adopted the same reasoning, and applied the same doctrine and the same principles. In any event the rule for the determination of the place where property is situated would seem to be the same whether the Fourteenth Amendment or the power of Congress is involved. If intangibles are situated at the domicile of the owner in so far as States are concerned, it would seem that it would not be situated at a different place so far as the Federal Government is concerned.

In the case of *Compania de Tabaros* v. *Collector*, 275 U. S. 87 (1927), the court had before it a law of the Philippine Islands. The Philippine Organic Act contained a " due process clause " similar to that in the Fifth and Fourteenth Amendments. The court said:

It (the tax) is an imposition upon a contract not made in the Philippines and having no situs there and to be measured by money paid as premium in Paris, with the place of payment of loss, if any, in Paris. We are very clear that the contract and the premiums paid under it are not within the jurisdiction of the Government of the Philippine Islands.

It is of significance that even in the *Deganay* case, *supra*, the court, while it placed stocks and bonds on the same basis, did not

rest its decision upon the ground that the stock was in domestic corporations, but was to some extent at least based upon the doctrine of *Blackstone* v. *Miller*, 188 U. S. 189, and the principle announced in *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 576, from which the court quoted to the effect that the certificates themselves constituted property and were taxable where found. On this theory of course the securities involved here would be situated in the United States. This doctrine, however, was later repudiated in the *Missouri* and *Minnesota* cases, but the *Deganay* decision was also based upon the principle that the securities involved were held for business purposes in the United States, a principle later reaffirmed in the *Missouri* and *Minnesota* cases, and in the case of *Hill* v. *Carter*, 47 Fed. (2d) 869. So localized, the income therefrom was held to be from sources within the United States. This principle is not applicable here on the facts. The court did not intimate that the fact that the corporations were organized in the United States in and of itself was any basis for upholding the tax.

In the *Hill* case, *supra*, stocks, bonds and other securities were owned by a resident of Hawaii. They were in possession of a New York agent empowered to collect the income therefrom, to invest and reinvest the same and to sell any of the securities and to invest in others. The court held that the property had acquired a business situs in New York, and relied on the case of *DeGanay* v. *Lederer*, *supra*. That property may be held to be situated where it has a business situs is in accord with the language of the Supreme Court in the *Minnesota*, the *Rhode Island Trust Co.* and other cases. The stipulated facts in the case at bar remove it from the principle of the above case. Under the facts in this case the property had no business situs nor was it situated here under the maxim, *mobilia sequuntur personam*. It is not necessary for us to decide, as the court did in the *Hill* case, that intangibles, having acquired a business situs, lost their otherwise recognized situs at the place of the domicile of the owner. Nor is it necessary for us to discuss the principle of double taxation. Such principle does not affect this case. Nor do I see any principle or language in the case of *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83, which is inconsistent with the views here expressed.

In my opinion, in view of the foregoing, the provisions in the statute that stocks in domestic corporations shall be deemed property situated in the United States is ineffective unless such stock is situated in the United States because its owner resides here or unless it has a business situs in this country.