132

HELEN BEATRICE (DUVEEN) CROCKER, FREDERICK CLIFTON AND ARCHIBALD EDWARD CHURCHER, EXECUTORS OF THE ESTATE OF LOUIS JOEL DUVEEN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31573.   Promulgated May 17, 1933.

*George E. Cleary, Esq.,* for the petitioners.
*Frank T. Horner, Esq.,* for the respondent.

OPINION.

BLACK: Petitioners' assignments of error upon which they rely may be summarized as follows:

1. The Commissioner is barred from assessing or collecting any additional tax, interest, or penalty in this case because of the running of the statute of limitations.

2. The maxim " *sequuntur mobilia personam* " applies to the shares of stock in domestic corporations owned by decedent, Louis Joel Duveen, at the time of his death and the situs of said shares of stock was at the domicile of decedent in England and not in the United States, and that that part of section 403 (b) (3) of the Revenue Act of 1918 which provides that " For the purpose of this title stock in a domestic corporation owned and held by nonresident decedent, * * * shall be deemed property within the United States " is unconstitutional because in violation of the Fifth Amendment to the Constitution of the United States. Petitioners also contend

that none of said shares of stock had a business situs in the United States and that for the reasons above stated it was error on the part of the Commissioner to include the value of any of said shares of stock as a part of decedent's gross estate.

3. That even if section 403 (b) (3) is constitutional and it is proper to include the value of the shares of stock which decedent owned in domestic corporations in his gross estate, nevertheless as to the stock in Duveen Brothers, Inc., which decedent had contracted to purchase from the executors of the estate of Henry J. Duveen, under the terms of the contract dated February 19, 1919, the extent of the interest of the decedent therein which was subject to the payment of charges against his estate and subject to the payment of expense of its administration and subject to distribution was not in excess of $269,963.70 and that no greater amount than $269,963.70 can in any event be included in the gross estate on account of said interest. In this computation of $269,963.70 is included $157,110.39 which represents the value of the shares which decedent had actually paid for at the time of his death and $112,853.31 which represents the value of his right to purchase the remainder of the stock contracted for but not paid at the time of death. As to this latter item petitioner contends it was intangible personal property which under the doctrine announced by the Board in *Ernest Brooks et al., Executors*, 22 B.T.A. 71, had its situs at decedent's domicile in England and was therefore not properly included as a part of his gross estate in the United States.

4. If it be held that the entire value of all the shares sold to decedent under the terms of the contract mentioned above should be included as a part of his gross estate in the United States, and that the deduction for the unpaid portion of the purchase price contracted to be paid for said stock, amounting to $552,534.54, and other deductions are limited to 10 per centum of the gross estate in the United States so determined, then section 403 (b) (1) which reads:

In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States—

(1) That proportion of the deductions specified in paragraph (1) of subdivision (a) of this section, which the value of such part bears to the value of his entire gross estate, wherever situated, but in no case shall the amount so deducted exceed 10 per centum of the value of that part of his gross estate which at the time of his death is situated in the United States;

as thus construed is unconstitutional because such construction and application of the statute result in an arbitrary, capricious and confiscatory measure of tax and deprive persons of property without due process of law, contrary to the provisions of the Fifth Amendment of the Constitution of the United States.

We will first consider petitioners' plea of the statute of limitations. The tax in question was imposed under the terms of the Revenue Act

of 1918. The decedent, a nonresident alien, died on March 4, 1920. His will was not admitted to probate until June 17, 1924, at which time the executors qualified. The estate tax return was filed June 29, 1925, and the deficiency notice mailed on August 10, 1927. Prior to the enactment of the 1921 Act, the period of limitation applicable to the assessment of an estate tax was 15 months from the time of the delivery of the assessment list to the collector, as prescribed in section 3182 of the Revised Statutes. Assessment of the tax was not barred at the time of the enactment of the 1921 Act and, under the provisions of section 1322 of that act, the period was limited to four years after the tax *became due*. The due date was one year after death, which in the instant case was March 4, 1921. Therefore, under the 1921 Act assessment of the tax in the instant case would have been barred March 4, 1925.

Prior to the expiration of such 4-year period the 1924 Act was enacted. Section 316 of the Revenue Act of 1924 made applicable the period of limitation prescribed in section 1009 in lieu of the period prescribed in subdivision (a) of section 310 of the 1924 Act. The period prescribed in subdivision (a) of section 1009 was the same as that prescribed in section 1322 of the Revenue Act of 1921, viz., four years after the tax became due, but was made subject to the exception provided in subdivision (b), which reads as follows:

(b) In case of a false or fraudulent return with intent to evade tax, *of a failure to file a required return,* or of a willful attempt in any manner to defeat or evade tax, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. [Italics supplied.]

The return in question was filed on June 29, 1925, although it was due March 4, 1921 (see sections 404 and 406 of the Revenue Act of 1918, and article 77 of Regulations 37, revised in January 1921). On June 2, 1924, the date of the passage of the 1924 Act, there was no return on file and, according to the provisions of section 1009 of that act, the tax could have been assessed at any time. Petitioners contend that the expression "required return" as used in section 1009 (b) of the 1924 Act does not mean that the return must have been filed within the time required by the Commissioner's regulations under the 1918 Act. It is petitioners' contention that the return which they filed on June 25, 1925, was the "required return" mentioned in the exception contained in section 1009 (b) of the 1924 Act and that, although it was filed late, as tested by the Commissioner's regulations, the statute of limitations began to run from the due date of the tax, March 4, 1921, just as if the required return had been then on file, and was therefore barred when the deficiency notice was mailed, August 10, 1927. We do not agree with this contention. To say that the phrase "required return" meant anything other than a

timely return under the law and the Commissioner's regulations, would, to all intents and purposes, strike the term " required " from the act. It therefore follows that the assessment was not barred at the time of the passage of the 1926 Act, which in section 1109 (a) (2) provides that in case of a failure to file a return within the time required by law the tax may be assessed at any time. Accordingly, petitioners' plea of the statute of limitations is denied.

We will next take up petitioners' contention that section 403 (b) (3) of the Revenue Act of 1918, in so far as it provides that " For the purpose of this title stock in a domestic corporation owned and held by a nonresident decedent, * * * shall be deemed property within the United States," is unconstitutional because in violation of the due process clause contained in the Fifth Amendment to the Constitution of the United States. On authority of *Estate of John Joseph Garvan*, 25 B.T.A. 612; *First Nat. Bank of Boston* v. *Commissioner*, 63 Fed. (2d) 685; and *Burnet* v. *Brooks*, 288 U.S. 378, this contention must be denied. On the authority of those cases we hold that the value of the shares of stock in Duveen Brothers, Inc., and in Atchison, Topeka and Santa Fe Railway Co., to the extent of the interest owned therein by decedent at the date of his death, should be included as a part of his gross estate. In view of the above cited cases, it becomes unnecessary to consider whether such shares of stock had a business situs in the United States. The shares of stock were actually physically present in the United States and that is sufficient to justify their inclusion as a part of decedent's gross estate situated in the United States.

We will next discuss the contention made by petitioner in assignment of error No. 3.

Prior to the date of his death, the decedent had entered into contracts for the purchase of 2,565 shares of preferred and 1,000 shares of common stock of Duveen Brothers, Inc. The total purchase price to be paid by the decedent was $682,997.84. He had paid prior to the date of his death, $130,463.30, or less than one fifth of the entire purchase price. The respondent in computing the tax included in the gross estate the value of the entire amount of stock to be purchased by the decedent. The respondent applied the limitation on deductions prescribed in section 403 (b) (1). The deductions for administration expenses and debts other than the balance to be paid under the contracts exceeded the amount prescribed by this section. The result is that the respondent's determination includes in the estate upon which the tax was computed the entire value of the stock to be purchased, without deduction for the unpaid purchase price, although the decedent had paid for less than one fifth of the stock in

question at the time of his death. Petitioners contend that respondent should have taxed only the interest of the decedent in the stock and not the entire value of the stock covered by the purchase contract.

Title to the property which a vendor has contracted to sell but withholds pending satisfaction of some condition precedent, such as payment, does not pass to the purchaser until the condition is performed. *Van Tassel* v. *Burger*, 119 App.Div.N.Y. 509. Cf. *Charles W. Dahlinger*, 20 B.T.A. 176; *Newaygo Portland Cement Co.*, 27 B.T.A. 1097; *Lucas* v. *North Texas Lumber Co.*, 281 U.S. 11; *Anthony Schneider*, 3 B.T.A. 920; *Roscoe H. Aldrich*, 3 B.T.A. 911.

The contract relating to the purchase of stock involved in this proceeding contained provisions which appear inconsistent. The contract for example recites that the vendors " hereby sell, transfer and assign " and that the vendees " hereby purchase " certain shares of stock.

Later, the same contract provides, however, that ownership in the shares of stock shall be vested in the purchaser in proportion to his payments made. The contract in this respect reads:

FIFTH: (b) Upon payment of each installment, the Executors shall do all things necessary or proper for vesting against each such payment a proportionate amount of said Preferred Stock and said Common Stock in such names and such divisions as may be directed by the parties of the second part; and upon payment of all of the said installments with interest, as hereinbefore provided, the Executors shall vest any and all of said stock then not transferred in the parties of the second part, as they may direct.

Considering the contract as a whole, we are of the opinion that the intention of the parties was to convey to the vendees no absolute right of ownership in the stock greater than the installments of purchase price as paid. As fast as one of the ten installments of the purchase price was paid under the terms of the agreement, the ownership in a corresponding amount of the stock became vested in the vendees.

In the light of the contract under which the stock was purchased by decedent, and under authority of the above cited cases, we hold that of this particular block of stock in Duveen Brothers, Inc., all that should be included in decedent's gross estate is $157,110.39, which represents the value of the shares of stock purchased under the terms of the contract and which had actually been paid for at the time of his death. As to decedent's right to purchase the remainder of the stock contracted for but not paid for at the time of his death, which contractual right is conceded to have had a value of $112,853.31, petitioners contend that such right was intangible personal property, which under the doctrine announced by the Board in *Ernest Brooks et al., Executors, supra*, had its situs at decedent's

domicile in England and therefore was not properly included as a part of his gross estate in the United States.

Petitioner contends that this is true, even though it be held that stocks of a domestic corporation owned by a nonresident decedent do have a situs in the United States. Section 402, Revenue Act of 1918, provides:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate * * *.

This provision is applicable to nonresidents to the extent of property situated in the United States under section 403 (b), Revenue Act of 1918. The contractual right to purchase the stock at a price less than its market value at decedent's death was intangible personal property. All the physical evidences of such intangible personal property were situated in the United States. The contract to purchase the shares of stock, together with the certificates of stock themselves, were on deposit with the Guaranty Trust Company of New York City. We think that under the doctrine of the Supreme Court announced in the case of *Burnet* v. *Brooks, supra,* the value of the decedent's contractual right to purchase the remaining shares not paid for at the time of his death should be included as a part of his gross estate. The inclusion of this amount, as well as the value of the shares actually paid for at time of decedent's death, makes a total of $269,963.70 to be included as a part of decedent's gross estate on account of his interest in the shares of stock in Duveen Brothers, Inc., covered by the terms of the contract February 19, 1919. This is the maximum amount which petitioners contend should be included and with this part of their contention we agree.

In view of the above holding, it becomes unnecessary to pass upon the question of the constitutional validity of the language of section 403 (b) (1), cited in paragraph (4) of the statement of alleged errors, because petitioners only urge that particular ground in the event that we should hold that the entire value of the shares of stock purchased by Louis Joel Duveen from the estate of his brother, Henry J. Duveen, including that which had not been paid for as well as that which had been paid for, should be included as a part of his gross estate.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH and MURDOCK dissent.