## BALDWIN ET AL. v. MISSOURI.

No. 417. Argued April 23, 1930.—Decided May 26, 1930.

*Messrs. John F. Garner* and *Harry Carstarphen,* for plaintiffs in error and appellants.

*Messrs. Stratton Shartel,* Attorney General of Missouri, and *A. M. Meyer,* Assistant Attorney General, with whom *Mr. Lieutellus Cunningham,* Assistant Attorney General, was on the brief, for defendant in error and appellee.

Mr. Justice McReynolds delivered the opinion of the Court.

The validity of Sec. 558, R. S. of Missouri, 1919, was duly challenged in the court below; by the judgment there the rights of the parties were finally determined; the cause is properly here on appeal.

While a resident of Quincy, Adams County, Illinois, Carrie Pool Baldwin died, October 4, 1926. By will she left all her property to Thomas A. Baldwin, her son, a resident of the same place, and appointed him sole executor. The will was duly probated at her residence and under the statute of Illinois an inheritance tax was there laid upon the value of all her intangible personalty, wherever situated.

Ancillary letters of administration with the will annexed issued out of the probate court of Lewis County, Missouri, to Harry Carstarphen, October 22, 1926. A report to that court revealed that at the time of her death Mrs. Baldwin owned real estate in Missouri; credits for cash deposited with two or more banks located there; also certain coupon bonds issued by the United

States and sundry promissory notes which were then physically within that State. Most of these notes were executed by citizens of Missouri and the larger part were secured by liens upon lands lying therein.

Under Sec. 558, R. S. 1919,* (copied in margin) the State of Missouri demanded transfer or inheritance taxes reckoned upon the value of all the above described property. No denial of this claim was made in respect of the real estate; but as to the personalty it was resisted upon the ground that the property was not within the jurisdiction of the State for taxation purposes and to enforce the demand would violate the due process clause of the Fourteenth Amendment.

---

* Section 558, Revised Statutes of Missouri, 1919, Chapter 1, Article XXI:

"A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed or any interest therein or income therefrom, in trust or otherwise, to persons, institutions, associations, or corporation, not hereinafter exempted, in the following cases: When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state. When the transfer is by will, or intestate law of property within the state or within the jurisdiction of the state and decedent was a non-resident of the state at the time of his death. When the transfer is made by a resident or by a non-resident when such non-resident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift made in contemplation of the death of grantor, vendor or donor, or intending to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift made within two years prior to the death of grantor, vendor or donor, of a material part of his estate or in the nature of a final disposition or distribution thereof without an adequate valuable consideration shall be construed to have been made in contemplation of death within the meaning of this section. Such tax shall be imposed when any person, association, institution or corporation actually comes into the possession and enjoyment of the property, interest therein, or income therefrom, whether the transfer thereof is made before or after the passage of this act: *Provided,* that property which is actually vested in such persons or corporations before this act takes effect shall not be subject to the tax."

The Lewis County Circuit Court declared the transfer of the personal property not subject to taxation; the Supreme Court reached a different conclusion and directed payment.

It does not appear and is not claimed that either the decedent or her son ever resided in Missouri. The record discloses nothing tending to show that the personal property had been given a business situs in that State.

Among other things, the Supreme Court said—

" In recent cases we have held, for the purpose of *property* tax, that the situs of a credit is the domicile of the creditor, . . .

" If we could apply the same rule to an inheritance tax, we might have less difficulty in disposing of this case. The inheritance tax statute, Article XXI, Ch. 1, R. S. 1919, provides an entirely independent method of ascertaining the property subject to inheritance tax from that applicable for general tax. The definition of the term ' property ' in the last section, 589, of that Article, makes inapplicable any definition relating to general property tax. An inheritance tax is not a property tax, but an excise tax, or a tax upon succession. (*In re Zook's Estate,* 317 Mo. 986, 296 S. W. 780, and cases cited.) . . .

" These notes, bonds and cash were all in the possession of the administrator in Missouri. For what purpose they were in Missouri is not shown. We cannot assume that they were in the State of Missouri for the purpose of escaping taxation in the State of Illinois. It is a reasonable inference that the cash and notes in such large quantities in Missouri, when none of it was held in Illinois, was retained in this State for the purpose of investment. They may have established a business situs in this State, in which case it would be subject to a general tax as well as the inheritance tax. . . .

" It [the personalty] possibly acquired a business situs in this State. Whether it did or not it was within the

jurisdiction of the State and property subject to the transfer tax. It would have been a proper subject of inquiry by the trial court to determine how and why and under what conditions these evidences of debt were in this State, but whatever the determination of that question the property was legally within the jurisdiction of the probate court of Lewis county in this State and subject to the tax."

The challenged judgment rests upon the broad theory that a State may lay succession or inheritance taxes measured by the value of any deposits in local banks passing from a non-resident decedent; also upon the value of bonds issued by the United States and promissory notes executed by individual citizens of the State, when devised by such non-resident, if these bonds or notes happen to be found within the confines of the State when death occurs. The cause was decided below prior to our determination of *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204. *Blackstone* v. *Miller,* 188 U. S. 189, was cited in support of the conclusion reached. Considering *Farmers Loan & Trust Co.* v. *Minnesota* and previous opinions there referred to, the theory upon which the court below proceeded is untenable and its judgment must be reversed.

Ordinarily, bank deposits are mere credits and for purposes of *ad valorem* taxation have situs at the domicile of the creditor only. The same general rule applies to negotiable bonds and notes, whether secured by liens on real estate or otherwise.

In *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 498, 499, this Court declared—

" Plainly, therefore, our only duty is to inquire whether the Constitution prohibits a State from taxing, in the hands of one of its resident citizens, a debt held by him upon a resident of another State, and evidenced by the bond of the debtor, secured by deed of trust or mortgage

upon real estate situated in the State in which the debtor resides.

" The question does not seem to us to be very difficult of solution. The creditor, it is conceded, is a permanent resident within the jurisdiction of the State imposing the tax. The debt is property in his hands constituting a portion of his wealth, from which he is under the highest obligation, in common with his fellow-citizens of the same State, to contribute for the support of the government whose protection he enjoys.

" That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. Nor is the debt, for the purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt, and, as held in *State Tax on Foreign-held Bonds, supra* [15 Wall. 300], the right of the creditor ' to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand, . . . has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the State when held by a resident therein,' etc. Cooley on Taxation, 15, 63, 134, 270. The debt, then, having its *situs* at the creditor's residence, both he and it are, for the purposes of taxation, within the jurisdiction of the State."

And in *Blodgett* v. *Silberman*, 277 U. S. 1, 14—

" The question here is whether bonds, unlike other choses in action, may have a *situs* different from the owner's domicile such as will render their transfer taxable in the State of that *situs* and in only that State. We think

bonds are not thus distinguishable from other choses in action. It is not enough to show that the written or printed evidence of ownership may, by the law of the State in which they are physically present, be permitted to be taken in execution or dealt with as reaching that of which they are evidence, even without the presence of the owner. While bonds often are so treated, they are nevertheless in their essence only evidences of debt. The Supreme Court of Errors expressly admits that they are choses in action. Whatever incidental qualities may be added by usage of business or by statutory provision, this characteristic remains and shows itself by the fact that their destruction physically will not destroy the debt which they represent. They are representative and not the thing itself."

We find nothing to exempt the effort to tax the transfer of the deposits in Missouri banks from the principle applied in *Farmers Loan & Trust Co.* v. *Minnesota, supra.* So far as disclosed by the record, the situs of the credit was in Illinois, where the depositor had her domicile. There the property interest in the credit passed under her will; and there the transfer was actually taxed. This passing was properly taxable at that place and not otherwhere.

The bonds and notes, although physically within Missouri, under our former opinions were choses in action with situs at the domicile of the creditor. At that point they too passed from the dead to the living, and there this transfer was actually taxed. As they were not within Missouri for taxation purposes the transfer was not subject to her power. *Rhode Island Trust Co.* v. *Doughton,* 270 U. S. 69.

It has been suggested that should the State of the domicile be unable to enforce collection of the tax laid by it upon the transfer, then in practice all taxation thereon might be evaded. The inference seems to be that

double taxation—by two States on the same transfer—should be sustained in order to prevent escape from liability in exceptional cases. We cannot assent. In *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 240, a similar notion was rejected.

" The presumption and consequent taxation are defended upon the theory that, exercising judgment and discretion, the legislature found them necessary in order to prevent evasion of inheritance taxes. That is to say, 'A' may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the State readily to collect lawful charges against ' B.' Rights guaranteed by the federal Constitution are not to be so lightly treated; they are superior to this supposed necessity. The State is forbidden to deny due process of law or the equal protection of the laws for any purpose whatsoever."

If the possibility of evasion be considered from a practical standpoint, then the federal estate tax law, under which credit is only allowed where a tax is paid to the State, Sec. 1093, Title 26, U. S. C., must be given due weight. Also, the significance of the adoption of reciprocal exemption laws by most of the States, *Farmers Loan & Trust Co.* v. *Minnesota, supra,* cannot be disregarded.

Normally, as in the present instance, the State of the domicile enforces its own tax and we need not now consider the possibility of establishing a situs in another State by one who should undertake to arrange for succession there and thus defeat the collection of the death duties prescribed at his domicile.

This cause does not involve the right of a State to tax either the interest which a mortgagee as such may have in lands lying therein, or the transfer of that interest.

> *Reversed. The cause will be remanded to the Supreme Court of Missouri for further proceedings not inconsistent with this opinion.*

Mr. Justice Holmes.

Although this decision hardly can be called a surprise after *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204 and *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83, and although I stated my views in those cases, still, as the term is not over, I think it legitimate to add one or two reflections to what I have said before. I have not yet adequately expressed the more than anxiety that I feel at the ever increasing scope given to the Fourteenth Amendment in cutting down what I believe to be the constitutional rights of the States. As the decisions now stand, I see hardly any limit but the sky to the invalidating of those rights if they happen to strike a majority of this Court as for any reason undesirable. I cannot believe that the Amendment was intended to give us *carte blanche* to embody our economic or moral beliefs in its prohibitions. Yet I can think of no narrower reason that seems to me to justify the present and the earlier decisions to which I have referred. Of course the words " due process of law," if taken in their literal meaning, have no application to this case; and while it is too late to deny that they have been given a much more extended and artificial signification, still we ought to remember the great caution shown by the Constitution in limiting the power of the States, and should be slow to construe the clause in the Fourteenth Amendment as committing to the Court, with no guide but the Court's own discretion, the validity of whatever laws the States may pass. In this case the bonds, notes and bank accounts were within the power and received the protection of the State of Missouri; the notes, so far as appears, were within the considerations that I offered in the earlier decisions mentioned, so that logically Missouri was justified in demanding a *quid pro quo;* the practice of taxation in such circumstances I think has been ancient and widespread,

and the tax was warranted by decisions of this Court. *Liverpool & London & Globe Ins. Co.* v. *Assessors for the Parish of Orleans,* 221 U. S. 346, 354, 355. *Wheeler* v. *Sohmer,* 233 U. S. 434. (I suppose that these cases and many others now join *Blackstone* v. *Miller* on the *Index Expurgatorius*—but we need an authoritative list.) It seems to me to be exceeding our powers to declare such a tax a denial of due process of law.

And what are the grounds? Simply, so far as I can see, that it is disagreeable to a bondowner to be taxed in two places. Very probably it might be good policy to restrict taxation to a single place, and perhaps the technical conception of domicil may be the best determinant. But it seems to me that if that result is to be reached it should be reached through understanding among the States, by uniform legislation or otherwise, not by evoking a constitutional prohibition from the void of ' due process of law,' when logic, tradition and authority have united to declare the right of the State to lay the now prohibited tax.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE agree with this opinion.

Opinion of MR. JUSTICE STONE.

I agree with what MR. JUSTICE HOLMES has said, but as I concurred, on special grounds, with the result in *Farmers Loan & Trust Company* v. *Minnesota,* 280 U. S. 204 and *Safe Deposit & Trust Company* v. *Virginia,* 280 U. S. 83, I would say a word of the application now given to those precedents. I do not think that the overturning of one conclusion in *Blackstone* v. *Miller* by those cases should be deemed to carry with it *Scottish Union & National Insurance Co.* v. *Bowland,* 196 U. S. 611, *Wheeler* v. *Sohmer,* 233 U. S. 434, upholding a tax measured by a non-resident's bonds and notes, located within the taxing

state; *Savings Society* v. *Multnomah County,* 169 U. S. 421, upholding a tax measured by a non-resident's notes, secured by mortgages on land within the taxing state; or *Bristol* v. *Washington County,* 177 U. S. 133 and *Metropolitan Life Insurance Co.* v. *New Orleans,* 205 U. S. 395, upholding a tax upon intangibles having a "business situs" within the taxing state, but owned by a non-resident. These cases rest upon principles other than those applied in *Blackstone* v. *Miller* and are not dependent upon it for support.

It is true that the bonds and notes located in Missouri are choses in action, rights in which may be transferred at the domicil of the owner as well as in any other state in which he may chance to be. But the transfer made there is not completely effected without their delivery, which ordinarily can be compelled only in Missouri and in accordance with its laws. If negotiable, which so far as appears some of them were, their transfer by delivery within Missouri could defeat the transfer made in Illinois. When secured by mortgage on real estate, the transfer of the security, which is an inseparable incident of the chose in action, *Carpenter* v. *Longan,* 16 Wall. 271, *Lipscomb* v. *Talbott,* 243 Mo. 1, 31, may be affected by the recording laws, availed of only through the recording facilities where the land is located. See *Pickett* v. *Barron,* 29 Barb. 505; *Curtis* v. *Moore,* 152 N. Y. 159, 163.

These circumstances, I think, are sufficient to give the jurisdiction which I thought lacking in *Farmers Loan & Trust Company* v. *Minnesota,* to tax the transfer in Missouri, see *Hatch* v. *Reardon,* 204 U. S. 152 and *Rogers* v. *Hennepin County,* 240 U. S. 184; to say nothing of the further fact that Missouri laws alone protect the physical notes and bonds and the security located there. Apart from the question of jurisdiction, that one must pay a tax in two places, reaching the same economic interest, with respect to which he has sought and secured the bene-

fit of the laws in both, does not seem to me so oppressive or arbitrary as to infringe constitutional limitations.

Taxation is a practical matter and if, in the choice of the rule we adopt, we may, as the Court has said in *Farmers Loan & Trust Company* v. *Minnesota,* give some consideration to its practical effect, we ought not, I think, to overturn long established rules governing the constitutional power to tax, without some consideration of the necessity and of all consequences of the change. Under the law as it has been, no one need subject himself to double taxation by keeping his securities in a state different from his domicil, or by seeking the protection of its laws for his mortgage investments. But it is a practical consideration of some moment that taxation becomes increasingly difficult if the securities of a non-resident may not be taxed where located, and where alone they may be reached, but where the courts are not open to the tax gatherers of the domicil. See *Moore* v. *Mitchell, ante,* p. 18, 30 F. (2d) 600; *Colorado* v. *Harbeck,* 232 N. Y. 71.

It is said that the present record discloses nothing tending to show that the decedent's personal property had been given a business situs in Missouri. The Supreme Court of Missouri said: " It is a reasonable inference that the cash and notes in such large quantities in Missouri, when none of it was held in Illinois, was retained in this state for the purpose of investment. They may have established a business situs in this state. . . ."

The burden is not on the state to establish the constitutionality of its laws, nor are we limited in supporting their constitutionality to the reasons assigned by the state court. I do not assume, from anything that has been said in this or the earlier cases, that constitutional power to tax the transfer of notes and bonds at their business situs, no longer exists. As this Court has often held, the burden rests upon him who assails a statute to

establish its unconstitutionality. Upon this ambiguous record it is for the appellant to show that the stock and bonds subjected to the tax had no business situs within the taxing jurisdiction. See *Corporation Commission of Oklahoma* v. *Lowe, ante,* p. 431; *Toombs* v. *Citizens Bank of Waynesboro,* decided this day, *post,* p. 643.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS join in this opinion.