JUAN G. GALLARDO, TREASURER OF PUERTO RICO, Plaintiff and Appellee, *v.* THE UNITED PORTO RICAN SUGAR Co., Defendant and Appellant.*

No. 5013.   Argued July 22, 1930.—Decided July 20, 1931.

*J. Henri Brown, C. Ruiz Nazario,* and *G. E. González* for appellant. *James R. Beverley, Attorney General,* and *Arturo Ortiz Toro, Assistant Attorney General,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

This was a suit to recover the sum of $32,452.48 filed by the Treasurer of Puerto Rico against The United Porto Rican Sugar Company of Porto Rico. The facts were that the United Porto Rican Sugar Company had bought all the assets (*bienes*) of certain domestic corporations organized under the laws of Puerto Rico, and had assumed the obligations of all such other corporations; that the said domestic

---

* NOTE.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed.   See 62 F. (2d) 552.

corporations had been dissolved and the assets distributed among their shareholders; that the said domestic corporations, predecessors of the defendant, had paid interest to various foreign corporations in the United States, which said interest was subject to taxation in Puerto Rico; that none of the said foreign corporations had an office or agent in Puerto Rico; that therefore the various domestic corporations ought to have retained in Puerto Rico the amount due as taxes to the People of Puerto Rico. The interest was no longer due but had been actually paid by these domestic corporations to the said foreign corporations.

The principal averment of the answer was that these debts had no taxable situs in Puerto Rico; also that the various act or acts whereunder the treasurer sought to collect these taxes, properly interpreted, did not impose a tax for interest on these corporations; that in pursuance of the theory that the debts for interest had no taxable situs in Puerto Rico, the answer recited that all the debts from which interest was sought to be collected had been contracted in Baltimore, Maryland, where all the money was due; that to deduct the taxes from the amount of the interest due would violate the obligations of a contract, inasmuch as the whole amount of interest was due and owing in Baltimore, Maryland.

Section 3 of Act No. 43, Laws of 1921, in force, reads as follows:

"All income defined herein received or earned by citizens of the United States or by foreigners residing within or without Porto Rico, and by any corporation, association or partnership organized or constituted in Porto Rico, in the United States or in foreign countries and doing business in this Island, either directly or through agents or representatives, or who in any way derive income from sources located in this Island, or from the sale in Porto Rico or elsewhere of fruits, products or manufactures harvested, produced or manufactured in Porto Rico, shall be subject to the payment of the income tax hereby established.

"In the case of a succession or of a community of interests, the income shall be computed individually on the proportional share belonging to each heir or participant, pursuant to law."

Section 19 of Act No. 74, Laws of 1925, provides:

"(a) In the case of a nonresident individual not a citizen of Porto Rico the following items of gross income shall be treated as income from sources within Porto Rico:

"(1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise;"

The plaintiff demurred to the answer. The case was submitted to the District Court of San Juan on briefs and the court sustained the demurrer of the government.

As a general rule, probably without exception, real estate may not be taxed except in the place where it is located. Similarly, very generally tangible personal property may not be taxed except where it is found. *Safe Deposit and Trust Co. of Baltimore* v. *Virginia*, 280 U. S. 83, and cases cited therein. The courts, when it comes to said tangible property, have refused to follow the maxim *Mobilia sequuntur personam,* and have held that it should only be resorted to when convenience and justice so required; that the principal use of a legal fiction is to prevent injustice. *Union Transit Co.* v. *Kentucky*, 199 U. S. 194, 208.

Tremendous difficulties have arisen upon the subject of the situs for the taxation of intangible property like bonds, notes, open accounts, and other evidences of indebtedness. Up to a comparatively recent time, the theory of a great number of States was that intangible property might be taxed not only at the domicile of the owner, but for various purposes, at the domicile also of the debtor. *Blackstone* v. *Miller,* 188 U. S. 109, is perhaps the leading case on the subject matter. The opinion was written by Mr. Justice Holmes, with Mr. Justice White dissenting. The facts were that some one resident in Illinois had left over four million dollars on deposit in New York probably, as the court surmised, for future investment. The owner of this money or

securities died. The State sought to impose an inheritance transfer tax and the Supreme Court of the United States held that New York could legally do so, inasmuch as the taxation was on a transfer of the money and for the reason, it may be said, that the protection given by New York afforded the means of collecting the said money; and that the debt was given validity by the fact that the law of the place where the debtor was would make him pay. The Court also held that the maxim *Mobilia sequuntur personam* should only be invoked when equity and justice required it and could not be successfully invoked in *Blackstone* v. *Miller*.

This case was followed to a large extent by various courts of the United States. Recently, however, in *Farmers Loan Co.* v. *Minnesota,* 280 U. S. 204, through Mr. Justice McReynolds the Court said:

"Blackstone v. Miller, *supra,* and certain approving opinions, lend support to the doctrine that ordinarily choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two States may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. The inevitable tendency of that view is to disturb good relations among the States and produce the kind of discontent expected to subside after establishment of the Union. The Federalist, No. VII. The practical effect of it has been bad; perhaps two-thirds of the States have endeavored to avoid the evil by resort to reciprocal exemption laws. It has been stoutly assailed on principle. Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. Blackstone v. Miller no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled.

"Four different views concerning the situs for taxation of negotiable public obligations have been advanced. One fixes this at the domicile of the owner; another at the debtor's domicile; a third at the place where the instruments are found—physically present; and the fourth within the jurisdiction where the owner has caused them to become integral parts of a localized business. If each State can adopt any one of these and tax accordingly, obviously the same bonds may be declared present for taxation in two, or three, or four places

628

at the same moment. Such a startling possibility suggests a wrong premise.

"    *      *     *      *      *      *      *

"While debts have no actual territorial situs we have ruled that a State may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the creditor's domicile for taxation purposes. Tangibles with permanent situs therein, and their testamentary transfer, may be taxed only by the State where they are found. And, we think, the general reasons declared sufficient to inhibit taxation of them by two States apply under present circumstances with no less force to intangibles with taxable situs imposed by due application of the legal fiction. Primitive conditions have passed; business is now transacted on a national scale. A very large part of the country's wealth is invested in negotiable securities whose protection against discrimination, unjust and oppressive taxation, is matter of the greatest moment. Twenty-four years ago Union Refrig. Transit Co. v. Kentucky, *supra*, declared—'. . . in view of the enormous increase of such property (tangible personalty) since the introduction of railways and the growth of manufactures, the tendency has been in recent years to treat it as having a *situs* of its own for the purpose of taxation, and correlatively to exempt (it) at the domicile of the owner.' And, certainly, existing conditions no less imperatively demand protection of choses in action against multiplied taxation whether following misapplication of some legal fiction or conflicting theories concerning the sovereign's right to exact contributions. For many years the trend of decisions here has been in that direction.

"Taxation is an intensely practical matter and laws in respect of it should be constructed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota.

"Railroad Company v. Pennsylvania—'State Tax on Foreign-Held Bonds Case'—15 Wall. 300, 320, distinctly held that the State was without power to tax the owner of bonds of a domestic railroad corporation made and payable outside her limits when issued to and held by citizens and residents of another State. Through Mr. Justice Field the Court said—

'' 'But.debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property' there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.' ''

Mr. Justice Stone concurred in the result and Messrs. Justices Holmes and Brandeis dissented.

The one notable exception to the application of the said maxim is when the owner of securities establishes an agency in another jurisdiction for loans or investments or the like, as shown in *Bristol* v. *Washington County*, 177 U. S. 133.

The appellant placed a great deal of reliance on the fact that the Legislature of Puerto Rico did not intend to impose a tax on interest paid as in this case. Our reading of the law leads to an opposite conclusion. We think the intention was to impose a tax on income derived from any source in Puerto Rico and that the words referring to fruits and other commodities mentioned in the Act were only applicable to sales.

We have said that the interest was actually paid to the creditors in Baltimore. The tax is imposed on the creditors or the credit. The various acts of the Legislature imposed no penalty on a debtor for failing to retain the taxation on interest alleged to be due. A serious doubt arises whether it is within the power of the Legislature to compel a local corporation to pay taxes that are really and fundamentally payable by other persons.

To resume the principal point. The position of the Supreme Court of the United States is, that just as tangible

property, real and personal, under due process of law may have only a single· situs for taxation, similarly, with very limited exceptions, intangible property must have a single situs for taxation purposes. The maxim *mobilia sequuntur personam* in the interest of justice and expediency is given the widest application possible. See also *Safe Deposit & Trust Co.* v. *Virginia, supra,* and *Baldwin* v. *Missouri,* 281 U. S. 586.

The judgment must be reversed and the complaint dismissed.