CHLORIS McCORMICK DE McKINLEY, ETC., Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 5676.   Argued February 9, 1932.—Decided March 14, 1933.

*Carlos J. Torres* for appellant.   *Charles E. Winter, Attorney General, (James R. Beverley* on the brief), *M. Rodríguez Serra, Assistant Attorney General,* and *J. L. Córdova, Deputy Attorney General,* for appellee.

MR. JUSTICE ALDREY delivered the opinion of the Court.

The judgment appealed from in this case was rendered against the plaintiff after the lower court had decided that her complaint did not state facts sufficient to constitute a cause of action.

Chloris McCormick, as widow of Wm. Alexander McKinley, for herself and as mother with *patria potestas* over her minor daughter born of such marriage, Axelina McKinley McCormick, brought an action, in the District Court of San Juan, against the Treasurer of Puerto Rico for the return of part of the sum paid as inheritance tax on the property left by Wm. Alexander McKinley at his death, and to this end she alleged that she presented·to the Treasurer the statement of the assets constituting the inheritance; that the said official acknowledged that the value of the assets of the estate was $178,944.07, and, after deducting from this amount the liabilities of the estate and the share of the widow in the community property, he fixed the value of the inheritance at $108,349.54, and levied a tax on the same amounting to $3,296.31, without deducting the value of the property located outside of this island, which tax was paid; that among the

assets which the Treasurer took into consideration in levying this tax there were funds, bonds, stock certificates, a certain number of shares of stock, and some insurance policies having a total value of $117,249.41, all deposited by McKinley, before his death, with banks located outside of this island; that the tax pertaining to the property located in this island is only $1,061, and since plaintiff has paid an inheritance tax of $3,296.31, the difference of $2,235.31 should be refunded to them as having been improperly paid; and that they have requested the Treasurer to return this difference to them, which he has refused to do.

. The lower court sustained a demurrer to the complaint, and as a consequence entered its judgment, on the ground that any cause of action that the plaintiffs might have is not against the Treasurer, but against The People of Puerto Rico. However, there is in this case another and more fundamental question, that is, whether the Treasurer was justified in including in the sum of $108,349.54 on which he based the inheritance tax which was levied, the $117,249.41 representing the value of deposits existing outside of the Island, for if he acted correctly, the plaintiffs would have no cause of action whatever, and it would be unnecessary to decide in this case the point on which the lower court based its decision.

Section 368 of the Political Code, as modified and amplified by Act No. 99 of 1925 (Session Laws, p. 790), imposes an inheritance tax on all real property and personal property owned by residents of Puerto Rico. The credits of the deceased consisting in the funds, bonds, and stock certificates which he owned are intangible personal property and are subject to tax according to that statute, as are also his insurance policies, which we must assume are payable to his estate, no allegation to the contrary having been made.

The question to which we refer has been considered and decided by the highest Court of the nation. One of the cases decided is that of *Blackstone* v. *Miller*, 188 U.S. 189, the doctrine of which we shall not state, since it was expressly

reversed in *Farmers Loan Co.* v. *Minnesota,* 280 U.S. 204, to which we shall refer later, and which we have followed in *Gallardo* v. *United Porto Rican Sugar Co.,* 42 P.R.R. 624. In *Blodgett* v. *Silberman,* 277 U.S. 1, it was held that the state of a decedent's domicile may impose a succession tax on the transfer of his intangible property by inheritance under its laws, even though the evidences of such property be outside the state at the time of his death, and even though the transfer be subject to taxation in another jurisdiction. The case also holds that bonds and certificates of indebtedness of the United States, payable to bearer and transferable from hand to hand, though having some of the qualities of physical property are nevertheless intangible property—choses in action—subject to succession tax by the state of the deceased owner's domicile, although physically they have been in another state ever since he acquired them. And in *Farmers Loan Co.* v. *Minnesota, supra,* it was held that the maxim *mobilia sequuntur personam* applies to bonds and certificates of indebtedness issued by a state or its municipality, as to ordinary choses in action, and they have *situs* for inheritance tax purposes at the domicile of their owner. In the case of *Baldwin* v. *Missouri,* 281 U.S. 586, a woman resident of Illinois, dying there, willed all her property to her son. She owned real estate in Missouri; credits for cash deposited with some banks there; also certain coupon bonds issued by the United States; and sundry promissory notes some of which were executed by citizens of Missouri and some were secured on lands there. The inheritance tax was paid in Illinois and it included the intangible property which was located in Missouri. The latter State also levied an inheritance tax on the assets held there. No claim was made against the tax in respect to the real estate but as to the personalty the demand for the tax was resisted upon the ground that the property was not within the jurisdiction of the State of Missouri for taxation purposes and to enforce the demand would violate the due process clause of the Four-

teenth Amendment to the Constitution of the United States. The Supreme Court of the United States held that ordinarily, bank deposits are mere credits which for purposes of taxation have their *situs* in the domicile of the creditor only; that the same rule applies to negotiable notes, whether secured by liens on real estate or otherwise; and that the bonds and notes, although physically within Missouri, were choses in action with *situs* at the domicile of the creditor and hence were not subject to inheritance tax in Missouri.

In view of the decisions to which we have referred, we must arrive at the conclusion that the intangible personal property held by the deceased McKinley outside of this island was subject to inheritance tax in this jurisdiction, and therefore the Treasurer did not improperly collect any sum from the appellants. For this reason the judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.