[No. 24911.   Department One.   September 10, 1934.]

*In the Matter of the Estate of* ELIZABETH EILERMANN, *Deceased.*

HERMAN E. BROWN, *as Administrator, Respondent,* v. WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant.*[1]

*Willam H. Pemberton,* for appellant.

*Herman E. Brown,* for respondent.

[1]Reported in 35 P. (2d) 763.

16

MILLARD, J.—Elizabeth Eilermann, a resident of the state of New Jersey, owned two parcels of real property in this state. Under executory installment sale contracts, she sold the land to two residents of this state. The vendor died testate June 30, 1932, in Jersey City, New Jersey. At that time, the balances on the two contracts aggregated twenty-five hundred dollars. Mrs. Eilermann bequeathed her interest in the two contracts to her cousin and to her daughter-in-law.

Mrs. Eilermann's will was admitted to probate in New Jersey and in this state. In the hearing on the administrator's petition for approval of final account and for decree of distribution, the supervisor of the inheritance tax and escheat division of the state appeared and insisted that, under the following statutory provision, the above-described property of the decedent in this state is subject to an inheritance tax:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritances of this or any other state, . . . shall, for the use of the state, be subject to a tax . . . ." Rem. Rev. Stat., § 11201 [P. C. § 7051].

The trial court concluded that the interest of a non-resident vendor in a contract for the sale of land situated within this state is intangible personal property having its situs at the domicile of the vendor, and it is not taxable in this state. The supervisor has appealed.

In *In re Sherwood's Estate*, 122 Wash. 648, 211 Pac. 734, *In re Ellis' Estate*, 169 Wash. 581, 14 P. (2d) 37, 86 A. L. R. 734, and *In re Lyons' Estate*, 175 Wash. 115, 26 P. (2d) 615, we held that intangible personal property has its situs in the domicile of its owner and is only subject to inheritance tax by the state of the owner's domicile. See, also, *Baldwin v. Missouri*,

281 U. S. 586, 50 S. Ct. 436, 72 A. L. R. 1303, and *First National Bank of Boston v. Maine,* 284 U. S. 312, 77 A. L. R. 1401.

In *Davie v. Davie,* 47 Wash. 231, 91 Pac. 950, we held that a gift *causa mortis* of a contract for the sale of land, deed for which was executed by the donor and placed in escrow until full payment, is not an oral gift of real estate, but is to be treated as personal property; that the vendor's interest in such a contract as those in the case at bar is intangible personal property. We said:

"Decedent was giving the proceeds from the sale of the land to be paid upon, and according to the terms of, the contract. There was no way of making a delivery except by placing in her possession the written contract and escrow deed, which was done. We think this was sufficient.

"With the contention that this was real estate and could not be legally made the subject of an oral gift, we cannot agree. Decedent and his wife had made a contract to sell this property. They had executed a deed to be held in escrow to be delivered when the purchaser should complete his payments as called for in said contract. Having done this, the interest in the real estate became such as is ordinarily treated as personal property in matters of administration. He was virtually giving her the proceeds coming from the sale. In the case of *Griggs Land Co. v. Smith,* 46 Wash. 185, 89 Pac. 477, this court said:

" 'But in the case at bar, the owner of the land had made a contract to convey and he could leave to his heirs only the interest then owned, which was virtually but the right to the proceeds—the holder of the contract being entitled to have the land conveyed to him upon paying the purchase price. In such cases the courts have treated the property, for purposes of administration, as personal rather than real. A recognition of this doctrine may be found in *Hyde v. Heller,* 10 Wash. 586, 39 Pac. 249.' "

We held in *In re Fields' Estate,* 141 Wash. 526, 252 Pac. 534, that decedent Fields' interest as vendor under an executory contract for the sale of real estate to .one Bethel should be treated as personal property for the purpose of administration. We said:

"On appeal they contend that the real estate involved in the Bethel contract should have been determined to be real estate belonging to the estate, and it and the other real estate, consisting of the lot in Asotin, should be distributed in equal shares to the widow and to them.

"Appellants rely chiefly upon our decisions to the effect that the purchaser of real estate under an executory contract acquires no title to the real estate, and that no title passes until the vendee has so performed the conditions of the contract as to entitle him to a deed. *Younkman v. Hillman,* 53 Wash. 661, 102 Pac. 773; *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658; *Smith v. Barber,* 97 Wash. 18, 165 Pac. 873; *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29.

"While it is true that no title passed to the vendee under the executory contract from Fields to Bethel, nevertheless, for the purpose of administration it should be treated as personal property rather than real property."

See, also, *In re Denning's Estate,* 112 Ore. 621, 229 Pac. 912, where it was held that an owner's interest in land is converted into personal property when such owner enters into an executory contract for the sale of the land and places the purchaser in possession, and that "the land should be treated, therefore, as personal property for the purpose of distribution."

We have consistently held that the situs of intangible property is at all times at the domicile of the owner. We have also repeatedly held that a vendor's interest under an executory contract for the sale of land should be treated as personalty for the purpose of administration. We can not see any good reason for holding

that, for the purpose of administration of an estate, a vendor's interest in such a contract should be treated as personalty but not so treated when the question of inheritance taxation is involved. The two situations are not distinguishable on principle.

Clearly, the interest of a nonresident vendor in a contract for the sale of land situated in another state is intangible personal property. That being so, it logically follows that the vendor's interest is taxable in the state of the owner's domicile, not in the state wherein the land lies.

"Real property situated within the state, although owned by a nonresident, is subject to taxation.

"Formerly it was held in several jurisdictions that, where a nonresident testator owning lands within the state directed a sale of such lands, or where it was absolutely necessary to sell them in order to execute the will, or where there was such a blending of realty and personalty by the testator in his will as clearly to show that he intended to create a fund out of both real and personal estate, and to bequeath the same as money, the doctrine of equitable conversion applied so as not to authorize the state within which the land was situated to levy an inheritance, succession, or transfer tax on the land or its proceeds; but now, under the principles laid down in later United States supreme court cases, the doctrine of equitable conversion of realty into personalty for the purposes of taxation is definitely overruled. . . .

" The interest of a nonresident vendor in a contract for the sale of land situated within the state is intangible personal property having its situs at the domicile of the vendor, and it is not taxable in the state wherein the land lies. . . . In most jurisdictions a nonresident's tangible personalty which is physically situated in the state is taxable there. In the case of intangible personalty, however, although it was held in some cases, decided prior to United States supreme court decisions settling the rules applicable in determining the situs of intangible personalty, that the laws

imposed a tax on a nonresident decedent's intangible personalty, the evidence of which was found in the state, the universal rule in the United States now is that, if a decedent is not a resident of the state at the time of his death his intangible personalty is not taxable therein, except possibly in a case where the intangible personalty has a business situs in the state." 61 C. J. 1635-1637.

In enunciating the rule confining the jurisdiction to impose death transfer taxes as to intangibles to the state of the domicile, the United States supreme court said in *First National Bank v. Maine,* 284 U. S. 312, 77 A. L. R. 1401:

"And it now is established by the three cases last cited that certain specific kinds of intangibles, namely, bonds, notes and credits, are subject to the imposition of an inheritance tax only by the domiciliary state; and this notwithstanding the bonds are registered in another state, and the notes secured upon lands located in another state, resort to whose laws may be necessary to secure payment.

"The rule of immunity from taxation by more than one state, deducible from the decisions in respect of these various and distinct kinds of property, is broader than the applications thus far made of it. In its application to death taxes, the rule rests for its justification upon the fundamental conception that the transmission from the dead to the living of a particular thing, whether corporeal or incorporeal, is an event which cannot take place in two or more states at one and the same time. In respect of tangible property, the opposite view must be rejected as connoting a physical impossibility; in the case of intangible property, it must be rejected as involving an inherent and logical self-contradiction. Due regard for the processes of correct thinking compels the conclusion that a determination fixing the local *situs* of a thing for the purpose of transferring it in one state, carries with it an implicit denial that there is a local *situs* in another state for the purpose of transferring the same thing there. The contrary conclusion as to intangible prop-

erty has led to nothing but confusion and injustice by bringing about the anomalous and grossly unfair result that one kind of personal property cannot, for the purpose of imposing a transfer tax, be within the jurisdiction of more than one state at the same time, while another kind, quite as much within the protecting reach of the Fourteenth Amendment, may be, at the same moment, within the taxable jurisdiction of as many as four states, and by each subjected to a tax upon its transfer by death, an event which takes place, and in the nature of things can take place, in one of the states only.

"A transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits, of a particular state; and it is unreasonable, and incompatible with a sound construction of the due process of law clause of the Fourteenth Amendment, to hold that jurisdiction to tax that event may be distributed among a number of states.

"It is true, there are such differences between bonds and stocks as might justify their being placed in separate categories for some purposes. But, plainly, they may not be so placed for the purpose of subjecting a transfer by death of the former to a tax by one state only, and a similar transfer of the latter to a tax by two or more states. Both are intangibles and both generally have been recognized as resting in contract, or, technically, as 'choses in action.' *Hawley v. Malden*, 232 U. S. 1, 12; *Blodgett v. Silberman*, 277 U. S. 1, 14. The reciprocal inheritance statutes now in force in a preponderating number of the states of the Union make no distinction between the various classes of intangible personal property. The New York statute, for example, under that term includes 'deposits in banks, mortgages, debts, receivables, *shares of stock,* bonds, notes, credits, evidences of an interest in property, evidences of debt and choses in action generally' Genl. L. N. Y., 1930, c. 710, § 1. This impressive recognition of the substantial identity of the enumerated intangibles, for purposes of death taxation, is entitled to weight.

"A distinction between bonds and stocks for the essentially practical purposes of taxation is more fanciful than real. Certainly, for such purposes, the differences are not greater than the differences between tangible and intangible property, or between bonds and credits. When things so dissimilar as bonds and household furniture may not be subjected to contrary rules in respect of the number of states which may tax them, there is a manifest incongruity in declaring that bonds and stocks, possessing, for the most part, the same or like characteristics, may be subjected to contrary rules in that regard.

"We conclude that shares of stock, like the other intangibles, constitutionally can be subjected to a death transfer tax by one state only.

"The question remains: In which state, among two or more claiming the power to impose the tax, does the taxable event occur? In the case of tangible personalty, the solution is simple: the transfer, that is, the taxable event, occurs in that state where the property has an actual *situs,* and it is taxable there and not elsewhere. In the case of intangibles, the problem is not so readily solved, since intangibles ordinarily have no actual *situs.* But it must be solved unless gross discrimination between the two classes of property is to be sanctioned; and this court has solved it in respect of the intangibles heretofore dealt with by applying the maxim *mobilia sequuntur personam. Farmers Loan Co. v. Minnesota, supra* [280 U. S. 204], at pp. 211-212; *Baldwin v. Missouri, supra* [281 U. S. 586]; *Beidler v. South Carolina Tax Comm., supra* [282 U. S. 1].

"This ancient maxim had its origin when personal property consisted, in the main, of articles appertaining to the person of the owner, such as gold, silver, jewels and apparel, and, less immediately, animals and products of the farm and shop. Such property was usually under the direct supervision of the owner and was often carried about by him on his journeys. Under these circumstances, the maxim furnished the natural and reasonable rule. In modern times, due to the vast increase in the extent and variety of tangible personal property not immediately connected with the person of the owner, the rule has gradually yielded to the law of

the place where the property is kept and used. *Pullman's Car Co. v. Pennsylvania,* 141 U. S. 18, 22; *Eidman v. Martinez,* 184 U. S. 578, 581; *Union Transit Co. v. Kentucky, supra* [199 U. S. 194], 206. But in respect of intangible property, the rule is still convenient and useful, if not always necessary; and it has been adhered to as peculiarly applicable to that class of property. *Blodgett v. Silberman, supra,* 9-10; *Farmers Loan Co. v. Minnesota, supra,* 211; *Union Transit Co. v. Kentucky, supra,* 206.

"The considerations which justify the application of the fiction embodied in the maxim to death transfer taxes imposed in respect of bonds, certificates of indebtedness, notes, credits and bank deposits, apply, with substantially the same force, in respect of corporate shares of stock. And since death duties rest upon the power of the state imposing them to control the privilege of succession, the reasons which sanction the selection of the domiciliary state in the various cases first named, sanction the same selection in the case last named. In each case, there is wanting, on the part of a state other than that of the domicile, any real taxable relationship to the event which is the subject of the tax. Ownership of shares by the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts. *The Delaware Railroad Tax,* 18 Wall. 206, 229-230; *Rhode Island Trust Co. v. Doughton,* 270 U. S. 69, 81; *Eisner v. Macomber,* 252 U. S. 189, 213-214. And this interest is an incorporeal property right which attaches to the person of the owner in the state of his domicile. The fact that the property of the corporation is situated in another state affords no ground for the imposition, by that state, of a death tax upon the transfer of the stock. *Rhode Island Trust Co. v. Doughton, supra.* And we are unable to find in the further fact of incorporation under the laws of such state, adequate reason for a different conclusion.

"Undoubtedly, the state of incorporation may tax the transfer of the stock of a nonresident decedent, and

the issue of a new certificate to take the place of the old, under the power generally to impose taxes of that character. But, plainly, such a tax is not a death duty which flows from the power to control the succession; it is a stock transfer tax which flows from the power of the state to control and condition the operations of the corporation which it creates. A formal transfer of the stock upon the books of the corporation, and the issue of new certificates, bear a relation to the succession differing little, if at all, in substantial effect from that borne by the registration of the state bonds, involved in the *Farmers Loan Company* case, or the necessity of invoking the law of Missouri in respect of notes secured on Missouri lands, involved in the *Baldwin* case. Practical considerations of wisdom, convenience and justice alike dictate the desirability of a uniform general rule confining the jurisdiction to impose death transfer taxes as to intangibles to the state of the domicile; and these considerations are greatly fortified by the fact that a large majority of the states have adopted that rule by their reciprocal inheritance tax statutes. In some states, indeed, the rule has been declared independently of such reciprocal statutes. The requirements of due process of law accord with this view.''

Under the laws of New Jersey, intangible personalty of nonresident decedents is not subject to inheritance tax. Our statute (Rem. Rev. Stat., § 11203-1 [P. C. § 7068-21]) provides that intangible personalty of residents of states not imposing an inheritance tax upon intangible personalty of residents of this state shall be exempt from inheritance tax. That is an additional ground for affirmance of the judgment, which should be, and it is, affirmed.

MAIN, MITCHELL, and STEINERT, JJ., concur.

BEALS, C. J., dissents.