## Refund of Cantellauve Inheritance Tax

STRITE, Assistant Deputy Attorney General, January 3, 1935.—You ask to be advised whether the Board of Finance and Revenue may grant a petition for refund of transfer inheritance tax paid the Commonwealth of Pennsylvania by the Estate of Marie Adelaide Reygondaud de Villebardet de Cantellauve.

At the time of her death the decedent was a citizen and resident of France. She owned shares of stock in a Pennsylvania corporation. The certificates for the shares were in the hands of a depositary in France. On March 10, 1933, the estate paid transfer inheritance tax on the value of these shares. On November 14, 1933, a petition for refund was filed with the Board of Finance and Revenue. The claim of the estate for refund was based upon the decision of the Supreme Court of the United States in the case of First National Bank of Bos-

ton, Exec., v. Maine, 284 U. S. 312, 76 L. Ed. 313 (1932). The decision in that case was handed down subsequent to the payment of the tax in question.

On December 13, 1933, the Board of Finance and Revenue refused this petition.

On January 8, 1934, counsel for the estate requested a rehearing and alleged as an additional basis for the granting of a refund the terms of article VII of the Franco-American Treaty of 1853.

You ask to be advised whether the Board of Finance and Revenue should make a refund in this case. Supplementing your written request, you ask to be advised whether the tax was properly collected in view of the decision in the case of First National Bank of Boston v. Maine, supra. We shall answer this question before we discuss the effect of the treaty.

The first question may be stated as follows:

Has one of the States of the United States the right to impose transfer inheritance tax on shares of stock of a corporation domestic to that State, which shares form part of the estate of an alien dying while a resident of a foreign country?

The tax imposed in this case is clearly within the provisions of section 1 of the Act of June 20, 1919, P. L. 521, as last amended by the Act of June 22, 1931, P. L. 690, sec. 2, 72 PS §2301. No question of conflict of this section with any provision of the Constitution of the Commonwealth of Pennsylvania has been raised. The difficulty in answering the question comes entirely from certain decisions of the Supreme Court of the United States.

We must first decide if the tax in question is void because the Commonwealth lacks power over or jurisdiction of the property sought to be taxed.

Before the adoption of the fourteenth amendment to the Constitution of the United States, the Supreme Court of the United States had reached the conclusion that a tax imposed by a State was void unless that State had jurisdiction of the person or property sought to be taxed, such taxing laws being invalid simply as ultra vires from the standpoint of territorial jurisdiction, and without reference to any specific prohibition laid upon the States by the Federal Constitution: Willoughby, Constitutional Law of the United States, 1902; Fraenkel, The Supreme Court and the Taxing Power of the States, 28 Ill. Law Rev. 612, 615. See M'Culloch v. The State of Maryland et al., 4 Wheat. 316, 4 L. Ed. 579 (1819); Hays v. The Pacific Mail Steam-Ship Company, 17 How. 596, 15 L. Ed. 254 (1855); Railroad Company v. Jackson, 7 Wall. 262, 19 L. Ed. 88 (1869); St. Louis v. The Ferry Company, 11 Wall. 423, 20 L. Ed. 192 (1871); State Tax on Foreign-Held Bonds, 15 Wall. 300, 21 L. Ed. 179 (1873).

In First National Bank of Boston v. Maine, supra, the Supreme Court of the United States held that it was a violation of the due process clause of the fourteenth amendment for a State to impose transfer inheritance tax on the shares of stock of a corporation domestic to the State imposing the tax, which shares were part of the estate of a decedent whose domicile was in another State. The facts in First National Bank of Boston v. Maine are the facts in this case, except that the decedent in the instant case was a citizen of France domiciled in France.

It may be argued that the decision in the Maine case was based on the fourteenth amendment, or that it was based on fundamental want of power or jurisdiction of the State to lay the tax in question. We shall later discuss the argument based on the fourteenth amendment.

It is true that the opinion in the Maine case speaks of "want of jurisdiction" and of giving "extraterritorial operation" to State laws.

We are of the opinion, however, that any contention based on the Maine case, apart from the fourteenth amendment, is not sustainable in view of the more recent case of Burnet, Commr., v. Brooks et al., 288 U. S. 378, 77 L. Ed. 844 (1933), in which it was decided that Federal estate tax may be imposed upon bonds of corporations domestic to the United States, which bonds were part of the estate of a nonresident alien decedent. The Supreme Court held that the power of the Federal Government to lay such tax was not limited by the due process clause of the fifth amendment to the Federal Constitution. There remained the question of sovereign power or jurisdiction to tax. In sustaining the power of the United States to lay the tax in question Mr. Chief Justice Hughes said in his opinion, at page 396:

". . . So far as our relation to other nations is concerned, and apart from any self-imposed constitutional restriction, we cannot fail to regard the property in question as being within the jurisdiction of the United States,—that is, it was property within the reach of the power which the United States by virtue of its sovereignty could exercise as against other nations and their subjects without violating any established principle of international law. . . ."

Since the States of the United States are sovereign with respect to all persons and things, except as expressly or impliedly limited by the Federal Constitution, it seems clear that the principle of Burnet, Commr., v. Brooks et al. applies to the tax in question so far as we are concerned with sovereign power or of jurisdiction.

As a possible ground for distinction between Burnet, Commr., v. Brooks et al. and the instant case, it might be argued that the rule of that case applies only to shares of stock, the certificates for which were physically present within the territorial limits of the taxing sovereign. It is true that the language of the opinion may justify this distinction. We believe, however, that the court did not intend to limit the doctrine of Burnet, Commr., v. Brooks et al. in any such fashion. Such a limitation would be inconsistent with the attitude of the court clearly expressed only a few years before in Baldwin et al. v. Missouri, 281 U. S. 586, 74 L. Ed. 1056 (1930), to the effect that choses in action have a situs only at the domicile of their owner and where the evidences of debt or ownership happen to be found. In reaching its conclusion in Burnet v. Brooks the Supreme Court of the United States relied upon the decision of the House of Lords in Winans et al. v. Attorney General [1910]A.C. 27, where the bonds and certificates were physically situated in the taxing country. Shortly before the decision in Burnet, Commr., v. Brooks et al., the Judicial Committee of the Privy Council applied the rule of Winans et al. v. Attorney General to a case where the certificates were outside the taxing jurisdiction: Erie Beach Company, Ltd., v. Attorney General for Ontario [1930]A.C. 161; cf. Commissioner of Stamps, Straits Settlements v. Oei Tjong Swan et al. [1933]A.C. 378.

We are of the opinion that the supposed distinction is not a valid one. Therefore, we conclude that the tax imposed in the instant case is not invalid for want of power or jurisdiction to tax.

Next we must decide if the tax is unconstitutional because it violates the due process clause of the fourteenth amendment to the Constitution of the United States.

The fourteenth amendment to the Constitution of the United States was adopted in 1868 and reads in part (section 1) as follows:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law".

In Blackstone v. Miller, 188 U. S. 189, 47 L. Ed. 439 (1903), the Supreme

Court of the United States held that a State could tax the transfer of debts due from its residents to a resident of another State passing under the will of the nonresident. In other words, the State could subject to transfer inheritance tax the intangible personal property of a nonresident decedent. It was held that the imposition of such a tax by statute was not an abrogation of the privileges or immunities nor a deprivation of property without due process of law under the fourteenth amendment.

If Blackstone v. Miller were still the law there would be no question of the right of the State to levy the tax in question in the instant case. In The Farmers Loan & Trust Co., Exec., v. Minnesota, 280 U. S. 204, 74 L. Ed. 371 (1930), the Supreme Court of the United States held that the imposition of a transfer inheritance tax by a State in respect of the obligations of the State or its municipalities owned by a decedent domiciled in another State violated the fourteenth amendment to the Federal Constitution. This case expressly overruled the case of Blackstone v. Miller. Farmers Loan & Trust Co., Exec., v. Minnesota was followed by First National Bank of Boston, Exec., v. Maine, which we have summarized above in disposing of other arguments based on it.

In determining whether the rule of the Maine case applies to the instant case we shall now assume that the fourteenth amendment was the basis of the decision in that case. We are of the opinion, however, that the rule in that case will not apply to the instant case because the fourteenth amendment to the Federal Constitution does not protect the estate of a nonresident alien decedent against taxation by one of the States of the United States. Subsequent to the decision in the Maine case, the Supreme Court of the United States held in Burnet v. Brooks, supra, that Federal estate tax could be levied on intangible property of a nonresident alien decedent represented by securities physically present in the United States. In this case it was held that the due process clause of the fifth amendment to the Federal Constitution could not be invoked by the estate of a nonresident alien decedent to prevent the exaction of the Federal estate tax.

In City Bank Farmers Trust Co. v. Bowers, 68 F. (2d) 909, certiorari denied, 292 U. S. 644, 78 L. Ed. 1495, Judge Learned Hand of the Circuit Court of Appeals of the Second Circuit, discussing the due process clauses of the fifth and fourteenth amendments, said in his opinion at page 912:

"Furthermore, the question seems to us foreclosed by Burnet v. Brooks, 288 U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747. The Supreme Court had very recently decided that no state might levy a succession tax upon choses in action at the domicile of the obligor: Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. Ed. 371; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. Ed. 1056; Beidler v. South Carolina Tax Commission, 282 U. S. 1, 51 S. Ct. 54, 75 L. Ed. 131. In First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, this had been extended to shares of stock in a local corporation. This, as we read the opinions, was because the situs of such property was the domicile of the obligee; that put it beyond the jurisdiction of the state. Obviously, if this were a doctrine of universal application, it also applied to the United States. But that the court denied; the Fourteenth Amendment forbad the double taxation of citizens, but it did not protect nonresidents, who must rely only upon international arrangements between the United States and their sovereigns; for example, treaties, such as in this very case protect Frenchmen against discrimination by the states."

In City Bank Farmers Trust Co. v. Bowers the due process clause of the

fifth amendment was in issue, but the reasoning certainly applies to the due process clause of the fourteenth amendment. The only basis on which consistency may be found between the rulings of First National Bank of Boston, Exec., v. Maine and Burnet, Commr., v. Brooks et al. is that the fourteenth amendment, while protecting the estates of citizens of the United States domiciled in States other than the taxing State does not protect the estates of nonresident alien decedents from taxation by one of the States of the United States.

Therefore, we are of the opinion that the imposition of the tax in question in this case was not in violation of the due process clause of the fourteenth amendment of the Federal Constitution.

The last question before us is whether the tax violates the terms of the Franco-American Treaty of 1853, 10 Stat. at L. 996. Article VII of that treaty reads in part as follows:

"In all the States of the Union, whose existing laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing personal and real property by the same title and in the same manner as the citizens of the United States. They shall be free to dispose of it as they may please, either gratuitously or for value received, by donation, testament, or otherwise, just as those citizens themselves; and in no case shall they be subjected to taxes on transfer, inheritance, or any others different from those paid by the latter, or to taxes which shall not be equally imposed."

If the tax in question is discriminatory under the terms of the treaty, a grave question arises as to the power of the Federal Government, in the exercise of the treaty-making power granted by the Federal Constitution, to abrogate or interfere with the right of the States to levy and collect taxes. Provisions of treaties having this effect have been held to be within the scope of the treaty-making power of the Federal Government: Ex Parte Heikich Terui, 187 Cal. 20, 200 Pac. 954 (1921). It is not necessary for us to pass upon this question since we are of the opinion that the tax in question is not discriminatory.

The question before us was passed upon by the Supreme Court of California: In re McCreery's Estate, 220 Cal. 26, 29 Pac. (2d) 186 (1934). That case involved the Hay-Pauncefote Treaty now subsisting between the United States and Great Britain. The shares of stock in that case were in California on the date of decedent's death, but had no business situs therein. Referring to the case of Burnet, Commr., v. Brooks et al., supra, Mr. Justice Preston said in the opinion at page 30:

"That case disposes also of the further question raised by respondents that to tax the transfer is to violate the Hay-Pauncefote Treaty now subsisting between the United States and Great Britain, in that it would require the payment of a tax by subjects of the latter country where, under similar circumstances, citizens of the former would not be liable for such a tax. The discrimination claimed is not present for the rule here announced applies to American citizens who are nonresidents of the United States and domiciled in Great Britain as well as to citizens there domiciled of Great Britain itself."

The discrimination contracted against in the treaties is discrimination based on nationality. The discrimination caused by the ruling in the Maine case is based on residence. The tax in question is uniformly imposed upon the property of all persons subject to the jurisdiction of the Commonwealth of Pennsylvania. By reason of the Maine case, applying the fourteenth amendment, some are excluded, but this exclusion involves no test of nationality. The right to collect the tax is unimpaired as to persons resident and domiciled outside the territorial limits of the United States. We follow the view expressed by

the Supreme Court of California, and advise you that there is no violation of the terms of the treaty.

In conclusion, therefore, you are advised that the tax imposed in the instant case was properly collected; that the State has jurisdiction of the property taxed; that there is no violation of the fourteenth amendment; and no infraction of the Franco-American Treaty of 1853. The contention of the petitioners for refund is, therefore, demonstrated to be untenable.

From C. P. Addams, Harrisburg, Pa.